# IN RE CESAR G. ET AL.*
## (AC 17972)

Schaller, Spear and Hennessy, Js.

Argued September 28, 1999—officially released January 4, 2000

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

*Leon M. Kaatz*, for the appellant (respondent mother).

*Benjamin Zivyon*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Susan T. Pearlman*, assistant attorney general, for the appellee (petitioner).

*Lynn B. Cochrane*, for the minor child Cesar G.

*Opinion*

HENNESSY, J. The respondent mother[1] of four minor children, Cesar, S, A and M, appeals from the judgment of the trial court denying her motion to revoke the commitment of the children to the petitioner, the commissioner of children and families (commissioner).[2] The respondent claims that the court improperly (1) applied the statutory standards in ruling that the cause for commitment continued to exist and (2) found sufficient evidence that cause for the children's commitment remained. We affirm the judgment of the trial court.

The following facts are relevant to this appeal. On December 5, 1991, the commissioner filed petitions for orders of temporary custody of Cesar, A and S, along with neglect petitions, as a result of the death of their sibling, R. R died from cardiopulmonary arrest. Her autopsy report suggested that at the time of her death,

---

[1] The respondent fathers are not involved in this appeal. We refer in this opinion to the respondent mother as the respondent.

[2] Although the respondent lists the placement of the children out of state as an issue on her appeal form, it is not included in her statement of issues and is not argued in her brief. Under these circumstances, we hold that the issue is abandoned. See *State* v. *Barnett*, 53 Conn. App. 581, 587, 734 A.2d 991 (1999).

The attorney for the children was granted permission by this court to file a brief on behalf of the minor children, which supports the position of the respondent. The attorney for the children filed a brief on behalf of the child Cesar only, arguing that there is not sufficient evidence to conclude that a cause to continue Cesar's commitment exists and as a result the trial court improperly denied the respondent's motion to revoke Cesar's commitment.

R was suffering from malnutrition and blunt trauma from beatings. The respondent subsequently was arrested and convicted of cruelty to persons under General Statutes § 53-20. Pursuant to the respondent's plea of nolo contendere, Cesar, A and S were adjudicated to be neglected and were committed to the custody of the commissioner. Shortly thereafter, the respondent gave birth to another child, M, who later was adjudicated a neglected child and was committed to the care of the commissioner. The children's commitment was extended three times.

In 1996, the respondent, the children and the father of M filed a joint motion with the court to revoke the children's commitment. The court concluded that the cause to continue commitment remained and therefore denied the motion. The respondent appeals from that decision. The commissioner claims that the appeal should be dismissed as moot because subsequent to the filing of this appeal, the court once again extended the children's commitment and the respondent did not appeal that decision.

I

We first address the question of mootness raised by the commissioner. The claim is based on the premise that subsequent to the respondent's appeal of the denial of her motion for revocation of commitment, an extension of commitment was granted and the respondent did not appeal from that decision. The commissioner claims that the court's action on the recent extension of commitment renders this appeal moot because even if the appeal is found to be meritorious, no practical relief can be granted by this court.

"When, during the pendency of an appeal, events have occurred that preclude an appellate court from granting any practical relief through its disposition of the merits, a case has become moot." *In re Romance*

*M.*, 229 Conn. 345, 357, 641 A.2d 378 (1994). Mootness deprives this court of subject matter jurisdiction. *Loisel* v. *Rowe*, 233 Conn. 370, 378, 660 A.2d 323 (1995); *In re Corey E.*, 40 Conn. App. 366, 369, 671 A.2d 396 (1996). Where a respondent appeals from an order of the court extending the commitment of his or her children and the commitment subsequently is extended, this court has concluded that the "case is not moot in light of the continuing commitment of the child. The extension allows this court to grant practical relief to the appellant should it be warranted on the merits." *In re Todd G.*, 49 Conn. App. 361, 362 n.4, 713 A.2d 1286 (1998). In this case, the children presently are committed to the custody of the commissioner. The practical relief of revocation of commitment is potentially available. We therefore hold that the respondent's claim is not moot for purposes of this appeal.

II

The respondent first claims that the court improperly applied the statutory standards in ruling that the cause for commitment still exists. The gravamen of the claim is that the court based its ruling on the events that caused the original commitment of the children to the commissioner rather than on events subsequent thereto, and that the court relied too heavily on an expert witness who evaluated the respondent more than one year before the revocation of commitment hearing. We disagree.

General Statutes (Rev. to 1995) § 46b-129 (g), now § 46b-129 (m), provides in relevant part: "Any court by which a child . . . has been committed pursuant to the provisions of this section may, upon the application of a parent . . . upon finding that cause for commitment no longer exists, revoke such commitment . . . ." "The burden is clearly upon the persons applying for the revocation of commitment to allege and prove that

cause for commitment no longer exists. Once that has been established, the inquiry becomes whether a continuation of the commitment will nevertheless serve the child's best interests. On this point, when it is the natural parents who have moved to revoke commitment, the state must prove that it would not be in the best interests of the child to be returned to his or her natural parents. *In re Juvenile Appeal (Anonymous)*, 177 Conn. 648, 659, 420 A.2d 875 (1979)." *In re Thomas L.*, 4 Conn. App. 56, 57, 492 A.2d 229 (1985).

"On appeal, our function is to determine whether the trial court's conclusion was legally correct and factually supported. We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached . . . nor do we retry the case or pass upon the credibility of the witnesses." (Internal quotation marks omitted.) *In re Tabitha T.*, 51 Conn. App. 595, 599, 722 A.2d 1232 (1999). "The determinations reached by the trial court that the evidence is clear and convincing will be disturbed only if [any challenged] finding is not supported by the evidence and [is], in light of the evidence in the whole record, clearly erroneous. *Pandolphe's Auto Parts, Inc.* v. *Manchester*, 181 Conn. 217, 221–22, 435 A.2d 24 (1980)." (Internal quotation marks omitted.) *In re Danuael D.*, 51 Conn. App. 829, 836, 724 A.2d 546 (1999).

In this case, the respondent argues that the court relied on facts and events that occurred years earlier, which resulted in the original commitment of the children to the commissioner. They are not events, she argues, that in the words of § 46b-129 (g), now § 46b-129 (m), are capable of "no longer [existing]." The list of facts contained in the court's memorandum of decision[3]

---

[3] For example, citing the court's memorandum of decision, the respondent's brief states: "Respondent was charged criminally with, inter alia, manslaughter and risk of injury to a [child]. . . . Respondent was found guilty of cruelty to persons and sentenced to a one year suspended sentence with probation . . . . The medical examiner concluded that [R] died from

cited by the respondent are those that referred to the abuse and death of R. The respondent avers that the use of those facts are inappropriate and suggests that R's death is the reason that the motion for revocation of commitment was denied. We disagree.

The court, in determining whether cause for commitment no longer exists, would obviously look to the original cause for commitment to see whether the conduct or circumstances that resulted in commitment continue to exist. The trial court, in reviewing this case, would want to know if the evidence showed that those traits of the respondent that resulted in the death of R were addressed and corrected. The trial court, thereafter, "may consider if *any* cause for commitment still exists." (Emphasis in original.) *In re Juvenile Appeal (Anonymous)*, supra, 177 Conn. 659.

The court concluded that causes for commitment still remain; namely, the respondent's anger, her inability to control it and her inability to parent the children adequately and safely. Although the court began its memorandum of decision with a recitation of the respondent's actions that led to the death of R, thereby placing the motion in context, it then reviewed the testimony of the respondent's therapist, the children's therapist and Richard Sadler, a court-appointed psychiatrist. Most of the witnesses testified that the respondent's anger control problems still remain.

The respondent contends that the court relied too heavily on the evaluation of Sadler, who had conducted an evaluation of the respondent more than one year before the revocation hearing. Sadler testified that the respondent had parenting problems and had not adequately addressed her deficits. According to the respondent, by relying on Sadler's opinion, the court was in

malnutrition and blunt trauma to the body . . . . Respondent beat [R] on more than one occasion . . . ."

essence relying on past facts and events that cannot be altered by the respondent. We disagree. In its memorandum of decision, the court noted other witnesses who had opinions consistent with those of Sadler. For instance, the children's therapist testified that the respondent had difficulty controlling her anger and even struck Cesar in front of her. Another therapist testified that the respondent's parenting skills were poor and her methods of discipline were abusive. Upon consideration of the testimony of those witnesses, the court found that the respondent continued to have problems controlling her anger and could not adequately parent the children. The court did not rely on past events that are incapable of being changed. Instead, the court relied on the observations and evaluations of expert witnesses who stated that the respondent presently has problems with anger and with parenting her children. We hold that the court applied the proper statutory standard in determining that cause for commitment remained and that its factual findings were not clearly erroneous.

### III

The respondent claims next that there was insufficient evidence for the court to find that cause for commitment remains. The respondent claims that the court (1) gave Sadler's testimony too much weight because he relied on events that occurred before the commitment, and on an evaluation that was out-of-date and that contained errors of fact, (2) inappropriately relied on the testimony of Amaryllo Castro-Stevens of the Village for Families and Children, from whom the children received therapy and counseling, because her testimony was inconsistent and her conclusions contradictory, and (3) ignored the testimony of Betty Al-Sagaf of the Village for Families and Children, from whom the respondent received therapy and counseling. We find these arguments to be unavailing.

A

"The credibility of expert witnesses and the weight to be given to their testimony [is] determined by the trier of fact." (Internal quotation marks omitted.) *State v. Bruno*, 236 Conn. 514, 539, 673 A.2d 1117 (1996). "On appeal, our function is to determine whether the trial court's conclusion was legally correct and factually supported. . . . We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached . . . nor do we retry the case or pass upon the credibility of the witnesses. . . . Rather, on review by this court every reasonable presumption is made in favor of the trial court's ruling. . . . *In re Marvin M.*, 48 Conn. App. 563, 577–78, 711 A.2d 756, cert. denied, 245 Conn. 916, 719 A.2d 900 (1998)." (Internal quotation marks omitted.) *In re Natalia G.*, 54 Conn. App. 800, 802, 737 A.2d 506 (1999).

In concluding that cause for commitment remained, the court found that the respondent has anger control problems and an inability to parent her children adequately. Two of the therapists testified that the respondent struck one of the children during a supervised visit. Although the record shows that the respondent admitted to hitting her children, she does not understand that such behavior is inappropriate or appreciate the seriousness of R's death. Sadler testified that the respondent continued to describe herself as a fine parent who does not have parenting deficits and needs no help.

Sadler conducted his evaluations of the respondent and the children during May and June, 1996, completed his report on June 21, 1996, and testified at the revocation hearing on April 10, 1997. We conclude that the length of time between the evaluation and the testimony did not render the report outdated to the extent that the court could not rely on it. Sadler did rely on events

that took place before the children were committed, but the respondent's arrest for the death of R was an event that any evaluator would necessarily take into consideration. Indeed, it was the reason the remaining children were taken from the respondent and eventually committed. The court also noted that any errors or mistakes of fact Sadler assumed in his report were vigorously attacked on cross-examination. Thereafter, the court found Sadler's opinions to "be thorough and perceptive, and based on substantially accurate information and observations, and therefore, credible." We hold that this decision by the court is not clearly erroneous.

B

The respondent also claims that the testimony of Castro-Stevens was so contradictory and confusing that the court should not have relied on any of it. The portion of testimony set forth by the respondent to demonstrate her point focuses on whether, in her opinion, Castro-Stevens, who was qualified as an expert on children with special needs, would return the children to the respondent. Castro-Stevens gave conflicting answers as to whether to return the children to the respondent, but she stated that the main problem in returning the children was that the respondent would be overwhelmed by having several special needs children returned to her before she made further progress in anger management and with parenting skills. The court, as the trier of fact, "is free to accept or reject, in whole or in part, the testimony offered by either party." *Smith* v. *Smith*, 183 Conn. 121, 123, 438 A.2d 842 (1981). The decision of the court to rely on the testimony of Castro-Stevens that the respondent would be overwhelmed by the responsibilities of having the children is supported by the record. Indeed, other witnesses gave testimony consistent with Castro-Stevens' opinion. Therefore, we

find that the court did not commit clear error in relying on part of Castro-Stevens' testimony.

C

The respondent's final claim that the court ignored the testimony of the respondent's therapist, Al-Sagaf, is not supported by the facts. The court's memorandum of decision recites Al-Sagaf's testimony that the respondent eventually made some progress in her ability to be less confrontational, and with anger control and parenting techniques relating to discipline, and in understanding the needs of the children. The court considered the opinion of Al-Sagaf that the respondent was able to parent the children appropriately and that it was in their best interest to return home to the respondent. The court, however, did not find Al-Sagaf's opinion persuasive in light of the respondent's deep-seated and long-standing inability to control her anger and her doubtful commitment to the benefits of counseling. The court did not ignore the testimony of Al-Sagaf. Instead, the court properly weighed her testimony in light of the other witnesses who testified and decided to find it unpersuasive.

The judgment is affirmed.

In this opinion the other judges concurred.