[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
On May 1, 2000, the Department of Children and Families ("DCF") filed a petition for the termination of parental rights of Damaris T. and Santos M. with respect to their daughter, Ashley M. As to the respondent-mother, the termination petition alleged that: she abandoned the child, Ashley M.; she failed to rehabilitate herself within a reasonable period of time so as to encourage the belief that she could assume the role of a responsible parent for her daughter; and, there existed no ongoing parent-child relationship. See C.G.S. §§ 17-112 (j) (3)(A), (B) and (D). On September 1, 2000, the court (Harelston, J.) terminated the parental rights of the respondent-mother. As to the respondent-father, the termination petition alleged that he failed to rehabilitate himself within a reasonable period of time so as to encourage the belief that he could assume the role of a responsible parent for his daughter. See C.G.S. § 17-112 (j)(3)(B). On May 11, 2000, the respondent-father filed a motion to revoke commitment and transfer guardianship of Ashley M. to his sister, Candy K. and her husband, Adam K. On May 26, 2000. the court consolidated these matters.
The termination of parental rights trial and the revocation of commitment and transfer of guardianship hearing for the respondent-father was held on various dates in May through October, 2001. From the evidence presented and the applicable case law, the Court grants the termination of parental rights of Ashley M. and denies the revocation of commitment and transfer guardianship.
The Court finds the following:
Facts:
Ashley M. was born on March, 1997. At the time of her birth, the respondent-mother Damaris T. was twenty-four years old and the respondent-father Santos M. was twenty-three years old. Ashley M.'s parents never married. DCF has been involved with this child since April 25, 1997. From April of 1997 to September of 1998, Ashley M. lived in seven different homes: five foster homes, the respondent-mother's home under protective supervision, and the paternal grandmother's home. The numerous placements, as well as the lack of attention afforded to her by the respondent-mother has resulted in Ashley M. exhibiting what is described as "Reactive Attachment Disorder of Early Childhood Disinhibited Type"; this disorder is significant and severe in that it CT Page 1518 impairs Ashley M.'s ability to be discriminating when it comes to trusting strangers. Ashley M. does not recognize the dangers of interacting with strangers and must be closely supervised so as to not allow her to wander away with an unknown person. Ashley M. is the youngest of six children of the respondent-mother. Four of respondent-mother's six children had their parental rights terminated on October 13, 1998; the fifth child had his parental rights terminated on September 1, 2000. Two of Ashley M. biological half siblings have been adopted by Ashley M.'s current foster mother. The foster mother wants to adopt Ashley M. as well. The foster mother is the only person that Ashley M. recognizes as a parent. Ashley M. looks to her foster mother for guidance and support. Ashley M. is bonded to the foster mother and her family and has made progress under their care and love. The credible evidence establishes that Ashley M. is bonded with her current foster family and looks to them for guidance and support.
Respondent-mother Damaris T. was born on February 27, 1973. She has an extensive drug history. She was erratic in attending counseling, visitation, and court hearings with respect to Ashley M. While she indicated that she was satisfied with her daughter's placement and would consent to a termination of her parental rights in the matter. the respondent-mother did not attend the court proceedings to enter her consent. A hearing was held in her absence and the court (Harleston, J.) terminated her parental rights on September 1, 2000. The credible evidence established that Damaris T. had minimal experience at maintaining a drug-free lifestyle and her prognosis for the future was poor.
Respondent-father Santos M. was born on October 4, 1977. He has had a chronic involvement in criminal activity. He is currently incarcerated on felony charges and his parole hearing date is not until April of 2007. His correctional disciplinary history includes fighting and the use of insulting language and behavior; he is noted to have an attempted escape as well. Santos M. had an upbringing that had significant domestic violence issues. His father was in and out of prison throughout Santos M.'s youth. Santos M. left home by age fourteen in order to avoid further physical abuse. Santos M.'s father sexually abused the respondent-father's sister, Candy K. The respondent-father's youngest sibling, a brother, is a delinquency-committed youth at Long Lane. Despite the numerous family problems, the respondent-father's parents still remain together and the respondent-father had hoped that Ashley M. could be raised by his parents. His mother was in fact given custody of Ashley M. for a period of approximately five months. DCF discovered, however, that the paternal grandmother had made significant misrepresentations in her relative certification contract and this led to the removal of the child from her care. In the alternative, the respondent-father had hoped that his sister CT Page 1519 and her husband could become the guardians for Ashley M. The sister, however, during the court ordered psychological examination minimized her own traumatic childhood experiences with her father and in fact had a DCF visitation with the child while her father was present. The respondent-father's sister, while offering to be a placement resource for the child, did not cooperate fully during the preliminary meetings and had the added obstacle that her husband had a conviction for larceny and assault and was subsequently arrested on operating a motor vehicle under the influence and for possession of controlled substances charges. The credible evidence establishes that respondent-father has an antisocial behavior pattern and that guardianship of Ashley M. in his family would present a physical and psychological risk to the child.
 Legal Analysis
Reunification Efforts:
DCF must initially show by clear and convincing evidence that it "has made reasonable efforts to locate the parent and to reunify the child with the parent." C.G.S. § 17a-112 (j). In making this effort DCF is not required to do everything possible, but rather is required to do everything reasonable to reunify the child with the parent. In re DanielC., 63 Conn. App. 339, 361 (2001). DCF should not make reunification an impossibility. See id.
The Court finds by clear and convincing evidence that DCF made reasonable efforts to reunify Ashley M. with her parents, Damaris T. and Santos M.
Respondent-mother selectively took advantage of the DCF efforts: namely she participated in individual and family counseling only when she chose to do so, and attended visits sporadically. Respondent-father made inconsistent efforts to reunify with his child: he did not attend any parenting classes; he did not follow through on substance abuse counseling; and, he repeatedly was involved in criminal activity. Further efforts on the part of DCF with respect to reunifying Ashley M. with respondent-father simply were not appropriate or possible.
Adjudicatory Findings:
The court finds by clear and convincing evidence that Santos M. has failed to rehabilitate to such degree as would encourage the belief, that within a reasonable time, considering the age and needs of this child, that he could assume a responsible position as a parent in Ashley M.'s life. CT Page 1520
The Court finds that the credible evidence establishes that Ashley M. was neglected and uncared for and has been under the supervision of DCF since April of 1997. The respondent father had been provided specific steps on May 23, 1997 to take to facilitate the return of this child and that he has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of this child, he could assume a responsible position as a parent in the life of this child. See, In re Eden F., 250 Conn. 674, 706. reargument denied, 251 Conn. 924 (1999). The Court defines "`personal rehabilitation' as used in [C.G.S. § 17a-112] as . . . the restoration of a parent to his or her former constructive and useful role as a parent." In re Felicia D., 35 Conn. App. 490, 501. cert. denied,231 Conn. 931 (1994).
The credible evidence establishes that the respondent-father was chronically involved in the criminal justice system, was unable to successfully address his narcotic addiction, and was sporadic in securing housing and employment. Santos M. showed poor judgment, impulsivity, and oppositional behavior. The credible evidence establishes that he has had repeated involvement in the criminal justice system and is unable to even manage his own affairs.
Based upon the Court's review of the evidence presented at trial, the Court finds that the respondent-father had been given a reasonable amount of time for his personal rehabilitation and has failed to do so in any meaningful manner. The Court finds that the respondent-father created conditions whereby termination was sought, and he failed to avail himself of reunification services. In re Kelly S., 29 Conn. App. 600, 616-18
(1992).
Required Findings:
Once the court finds that the allegations of the petition have been proven by clear and convincing evidence, the court must find, also by clear and convincing evidence, that termination is in the best interests of the child. In re Roshawn R., 51 Conn. App. 44, 52 (1998). "In arriving at this decision, the court is mandated to consider and make written findings regarding seven factors." In re Tabitha P., 39 Conn. App. 353
(1995).
The Court makes the following findings based upon the credible evidence presented at trial:
1. Each respondent-parent had the opportunity to engage in appropriate services provided to facilitate the reunion of the child with the parent. As to the respondent-father, these services included parenting and CT Page 1521 addiction assistance, as well as his obligation to refrain from further involvement in the criminal justice system;
2. DCF made reasonable efforts to reunite the child with her family pursuant to the federal Child Welfare Act of 1980;
3. The terms of respondent-father's specific steps are found in State's exhibit #3. The credible evidence shows that Santos M. did not fulfill these requirements even minimally;
4. The child has developed strong emotional ties towards her foster parent with whom she has lived with since September of 1998. Ashley M. looks to her foster family for care and comfort;
5. Ashley M. is four years old;
6. The respondent-father has not adjusted his circumstances to make it in the best interest of the child to return to him in the foreseeable future;
7. The respondent-father has not been prevented from maintaining a meaningful relationship with the child by unreasonable acts of the child, the other parent, or any other person or by economic circumstances.
These seven statutory factors are guidelines for the court and not prerequisites that must be proven before termination of parental rights is ordered. In re Quanitra M., 60 Conn. 96, 104, cert. denied, 255 Conn. 903
(2000). DCF is not required to prove by clear and convincing evidence each of the seven factors prior to the court's finding that termination of parental rights is in the child's best interest. Id., 105. This Court determines that based on the facts and the evidence presented that each of these factors has in fact been established by clear and convincing evidence as to this child.
Disposition:
A hearing for a contested termination of parental rights has two phases: (1) Adjudication. in which the court determines whether a statutory ground for termination exists by clear and convincing evidence, and (2) Dispositional, in which the court determines whether termination is in the best interests of the child. In re Kasheema L.,56 Conn. App. 484, 487, cert. denied, 252 Conn. 945 (2000). Evidence on adjudication is limited to events preceding the filing of the petition or the latest amendment. Evidence on disposition includes events occurring through the final hearing. In re Tabitha P., 39 Conn. App. 353, 367
CT Page 1522 (1995).
The Court finds that the grounds for termination alleged against the respondent-father have been proven by clear and convincing evidence. The Court has made the seven written findings required by law, all of which weigh in favor of termination being in the child's best interest. The best interests of the child include the child's interests in sustained growth, development, well-being, and continuity and stability of its environment.
The respondent-father has requested that the court revoke the commitment of Ashley M. and that his guardianship be transferred to his sister, Candy K. and her husband, Adam K. "The burden is clearly upon the persons applying for the revocation of commitment to allege and prove that the cause for commitment no longer exists. Once that has been established, the inquiry becomes whether a continuation of the commitment will nevertheless serve the child's best interests." In re Cesar G.,56 Conn. App. 289, 292-293, 742 A.2d 428 (2000). At this time there is no doubt that the cause for the commitment continues to exist. Ashley M. has specialized needs which require the attention and stability of her current foster mother. There is no evidence to indicate that Santos M. can meet her needs. Moreover, he has consistently been in favor of a transfer of guardianship to either the paternal grandmother and now the paternal aunt, recognizing that he cannot care for his daughter. Therefore, the Court denies the motion for revocation of commitment
Having denied the motion, the court must next consider the motion for transfer of guardianship. The Court finds based upon clear and convincing evidence that the placement with paternal relatives was not diligently pursued. The court finds from the clear and convincing evidence that while the paternal aunt and uncle have a seemingly close relationship with Ashley M. the closeness of the relationship is exaggerated due to Ashley M.'s attachment disorder. The court credits the opinion of Dr. Ines Schroeder in her diagnosis of Ashley M.'s condition. This is not to find that the aunt and uncle do not love and care for their niece; it is clear each has a great deal of affectionate feelings for Ashley M. The court finds that the "family" bond which is claimed by the respondent-father, however, does not rise to the level of a psychological parent and it clearly would not be in this child's best interest to switch placements at this time. The court therefore denies the motion for transfer of custody and guardianship to paternal aunt and uncle.
The court notes that Dr. Schroeder has indicated that there is a benefit for Ashley M. to maintain contact with her paternal aunt. The foster mother has allowed continued contact with the biological mother as she has determined to be appropriate; she is in the best position to do CT Page 1523 the same with Ashley M.'s paternal relatives. Because of the special needs of this child, the indication is that a clear message about Ashley M.'s permanency must be carefully supervised so that the child can enjoy the benefit of a relationship with her aunt without adding anxiety or stress to her daily life.
The court therefore determines that it is in the best interests of the child to terminate her parents' rights to her. The court finds that the foster mother is the person to whom she is attached and, given her special needs, that Ashley M. should not be moved again and required to form new attachments. Our courts have noted the "deleterious effect of prolonged temporary care of abused and neglected children." In re JuvenileAppeal (84-CD), 189 Conn. 276, 455 A.2d 1313 (1983). In addition, "[because of the psychological effects of prolonged termination proceedings on young children, time is of the essence . . ." In reAlexander V., 25 Conn. App. 741, 748, 596 A.2d 930 (1992). The court concludes, from the clear and convincing testimony, that it is in the best interests of Ashley M. to have permanency and stability in her life and that it is in her best interests that her parents' right to her be terminated.
The Court therefore orders that a termination of parental rights enter with respect to Santos M. and incorporates the previous findings of the court (Harelston, J.) with respect to Damaris T. The Court appoints the Commissioner of the Department of Children and Families as the statutory parent. The Court further orders a permanency and review plan to be filed for Ashley M. in accordance with State and Federal law.
Ordered this 8th day of February, 2002:
_________________________ JOAN K. ALEXANDER, JUDGE CHILD PROTECTION SESSION