[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION FOR REVOCATION OF COMMITMENT TO DEPARTMENT OF CHILDREN AND FAMILIES
Procedural Background
In this court, (Lopez, J.), on May 2, 2000, the parents of the above listed child, (Jaime, Sr., and Hilda, entered nob contendere pleas to allegations of neglect. The neglect petition and order of temporary custody arose out of allegations in September, 1999, that Jaime, Sr. had struck the then two month old Jaime, Jr., and that he had thrown Jaime, Jr. at Hilda. The petition also alleges that Hilda refused to require that Jaime, Sr., leave the family residence and had told the Department of Children and Families (DCF) to take custody of Jaime, Jr., rather than require Jaime, Sr. to leave the family residence. Pursuant to an agreement with the State, the child was committed to the custody of DCF for one year.
On September 22, 2000, the State filed a motion asking for the following
1. extension of the commitment;
 2. review and approval of the social study in support of the extension of the commitment and permanency plan, and;
 3. a finding that continuing efforts to reunify the child with either parent is not appropriate.
Counsel for Jaime, Sr. filed an objection to the state's motion and submitted his own plan, namely that custody of the child be transferred back to the respondent parents.
Counsel for Hilda filed a petition for revocation of the commitment, an objection to the extension of the commitment, an objection to the permanency plan and a request to revise the state's motion. On January 2, CT Page 14220 2001, a hearing was held before the court (Dewey, J.) on the motion. Judge Dewey subsequently granted the state's motion to extend the commitment, denied the respondent's motion to revoke the commitment and sustained the resonant's object to the permanency plan. See In The Interests of Jamie P., Jr., (Feb. 6, 2001) 2001 Ct. Sup. 2280,___ CLR ___.
On December 7, 2001, Hilda filed another motion to revoke the commitment. The hearing on this motion commenced on September 19, 2002.
Facts
Hilda called Nancy Gambini, Pam Cordoza, Neva Arroyo, and Jennifer Soto as witnesses on her behalf. Additionally, the respondent Hilda testified on her own behalf. The parties also agreed that the July 10, 2001 report by Donna Badillo Martinez, Ph.D, and the transcript of the January 2, 2001 hearing before Judge Dewey would be entered into evidence by agreement.
Hilda testified that both she and the respondent Jaime, Sr. are employed. She also indicated that, since the incident where Jaime, Sr. threw Jaime, Jr. at her, Jaime, Sr. has been on medication and that there have been no further incidents of domestic violence. She has no concerns about leaving Jaime, Jr., alone with Jaime, Sr. She further claimed that she had completed all required classes and counseling, and that she has adequate accommodations for Jaime, Jr. in their apartment.
On cross examination, Hilda claimed that she could have one of her family members babysit Jaime, Jr. at the times when both she and Jaime, Sr. were working, though she did not supply any detail with this plan. She admitted that there would times when each parent would be alone with Jaime, Jr. She testified that she was not allowed either extended visits, nor overnight visits, nor unsupervised visits with Jaime, Jr.
Hilda denies ever telling DCF that she was still involved in domestic violence or that she would not leave Jaime, Sr.
Nancy Gambini of PIP Program testified as to her observations of Hilda, Jaime, Sr. and Jaime, Jr. while they attended that program. Gambini indicated that she felt that Hilda was capable of caring for her son. However, she testified that she felt that Jaime, Sr. was not capable of caring for his son due to his failure to properly respond to the child's needs and his inattention.
Hilda also called Jennifer Soto, a Family Services support worker, as a CT Page 14221 witness. She testified that she observed twenty-two visits between Hilda and Jaime, Jr. and discussed parenting needs with Hilda between January, 2000 and July, 2000. Soto stated that Hilda had good attendance and was receptive to suggestions and recommendations. However, she found that Hilda had difficulties in changing and holding Jaime, and had difficulty in following through with recommendations, especially if she was unable to carry Out the initial plan or recommendation. Her testimony was that Hilda had difficulties with Jaime, Jr.'s developmental needs and that she would still have problems today. It was her belief that all visits between Hilda and Jaime, Jr. should still be supervised.
Soto had previously testified on January 2, 2001 that Jaime, Sr. was unable to interact appropriately with Jaime, Jr., indicating that she observed him lightly spank the child, hold him inappropriately, and not safeguard him from obvious dangers.
Adjudication
Connecticut General Statues § 46b-129 (m) provides that:
 "Any court by which a child. . . . has been committed pursuant to the provisions of the section, may, upon the application of a parent. . . . upon finding that cause for commitment no longer exists, revoke such commitment. . .".
The case law has held that:
 "The burden is clearly upon the persons applying for the revocation of commitment to allege and prove that the cause for commitment no longer exists. Once that has been established, the inquiry becomes whether a continuation of the commitment will nevertheless serve the child's best interests........ The court, in determining whether cause for commitment no longer exits, would obviously look to the original cause to see whether the conduct or circumstances that resulted in commitment continue to exist . . . The trial court, thereafter, "may consider if any cause for commitment still exists." (Internal citations and quotations marks omitted.) In re Cesar G., 56 Conn. App. 289, 292, 293, 294, 742 A.2d 428, (2000).
Based upon the testimony and evidence brought forth, it is clear that the respondent mother Hilda has failed to show that the cause for commitment no longer exists. Neither Gambini or Soto, who were both called as Hilda's witnesses, believed that Jaime, Sr. was an appropriate caretaker. Although Gambini believed that Hilda could care for the child, Soto was adamant in her belief that Hilda could not deal with CT Page 14222 Jaime, Jr. without supervision.
The respondent mother Hilda has not demonstrated that her parenting abilities have improved since the last hearing. It does appear that she did try to improve them. The record indicates that she undertook all steps required by DCF and the court in an attempt to become an appropriate parent. Unfortunately, Hilda's performance, probably to the best of her abilities, is not sufficient to show that the cause for commitment no longer exists. According to Dr. Martinez's evaluation, Hilda's performance on the Wechsler Adult Intelligence-III places her intellectual abilities within the extremely law range.
In her summary, Dr. Martinez further assesses Hilda:
 Her functioning has been historically limited by low ability to plan, self-evaluate and anticipate the consequences or [sic] her actions. . . . While naive and well intentioned, she is highly immature, pleasure seeking, and has minimal ability to effectively anticipate, delay her needs within a framework of values that promote positive relationships. Low comprehension, reasoning and problem solving deficits are the primary factors compromising her capacity to effectively function, sustain relationships and parent. While she has received multiple interventions, her capacity to generalize and internalize concepts to apply in new situations is very limited. Moreover, she is emotionally needy and invested in keeping the relationship and will likely rationalize, minimize, and be tolerant of discomfort to maintain it. The limitations of intellect will render her vulnerable to be victimized, and limited in her ability to protect her child. . . . It is not likely Ms. Millet will be able to effectively integrate all aspects of care needed to protect and care for a young child. The child does not appear to be well bonded to her, which will further affect the quality of the relationship.
The court finds the information supplied by Dr. Martinez to be credible. The respondent mother Hilda has failed to show that the situation described by Dr. Martinez has changed since the initial commitment to DCF.
Dr. Martinez also examined Jaime, Sr. and described him as follows:
"[Jaime, Sr.] is very fragile emotionally, and will experience becoming easily overwhelmed by routine life demands, conflicting needs between self and others, or overstimulation. He may then alternate between aggression or withdrawal as familiar methods of coping. He has conscious understanding that aggressive behaviors are unacceptable and CT Page 14223 may then attempt to cope with the unacceptable urges by withdrawing totally and delegating on others to resume his responsibilities. . . . However, given that the spouse has significant intellectual limitations, relinquishing responsibility to her has inherent risks. [Jaime, Sr.] does not yet have adult modes of understanding or managing his emotions to effectively resolve conflicts without losing control. This represents a risk for the young child who would be taken care of by [Jaime, Sr.] and his spouse [Hilda]. In addition, there are indications in the profile, that [Jaime, Sr.'s] mode of reacting may be emotionally intense and vicious. The attitudes will place the child at risk for emotional and physical harm.
There was no credible evidence supplied at this hearing to show that Jaime, Sr.'s situation or condition has improved.
Finally, the court finds that Hilda's plan for the care of her child during the period of time when both she and Jaime, Sr. are at their jobs to be ill-conceived and insufficient.
Based on the evidence shown at the hearing, the respondent mother Hilda has failed to show that the cause for commitment no longer exists.
Further, even if the court were to have concluded that there are no causes for commitment remaining, the court is required to consider whether or not a continuation of the commitment will nevertheless serve Jaime, Jr.'s best interests. In view of the nature of the unresolved problems plaguing both Hilda and Jaime, Sr., it has been shown by a fair preponderance of the evidence that a continuation of the commitment will serve Jaime, Jr.'s best interests. See In re Juvenile Appeal,177 Conn. 648, 658-59, 420 A.2d 875 (1979); In re Alexander C.,60 Conn. App. 555, 559, ___ A.2d ___ (2000).
 ORDER
The Motion to Revoke the Commitment of Jaime, P., Jr. to the custody of the Department of Children and Families is hereby ordered DENIED.
___________________ Taylor, J. CT Page 14224