[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION FOR REVOCATION OF COMMITMENT TO DEPARTMENT OF CHILDREN AND FAMILIES
Procedural Background
The neglect petition and order of temporary custody arose out of an investigation into neglect concerning all of respondent mother Rosanna's children in October, 1999. According to the affidavit attached to the motion for order of temporary custody, Rosanna told the Department of Children and Families (DCF) social worker that she had recently attempted suicide and planned to consume a rat and roach poison sandwich before the worker could come to her residence. The worker called 911 and Rosanna was later admitted to a local hospital.
As a result, DCF took custody of her daughter Penelope (born May, 1994) and one of her sons on a ninety-six hour hold, obtained temporary orders of custody (OTC) as to both children and filed neglect petitions as to all four of Rosanna's children.
On January 7, 2000, the OTC as to Penelope was sustained by agreement and specific steps were ordered (Lopez, J.).
In this court, (Schuman, J.), on April 5, 2000, Rosanna entered nob contendere pleas to allegations of neglect made in reference to Penelope. Judge Schuman committed Penelope to the custody of DCF until April 5, 2001 and reaffirmed Rosanna's specific steps.
On January 31, 2001, the court (Richards, J.) granted an extension of Penelope's commitment to April 5, 2002, but declined to approve of DCF's permanency plan, which called for termination of parental rights and adoption. Judge Richards also found that further reunification efforts were no longer appropriate as to Penelope and Rosanna.
On September 25, 2001, Rosanna, through her counsel, filed a motion to CT Page 14025-b revoke commitment as to Penelope and two other children.
On December 21, 2001, the State, through its Assistant Attorney General (AAG), filed a motion to maintain Penelope's commitment. On April 4, 2002, Penelope's commitment was extended until further order of the court. Subsequently, Rosanna's attorney reclaimed her motion to revoke commitment as to Penelope. This court heard testimony on the motion on October 22, 2002 and listened to the arguments of counsel on October 25, 2002. On October 22, 2002, Penelope's putative father did not appear and was defaulted.
Factual Findings
Counsel for Rosanna called Jacqueline Calhoun of Connecticut Counseling Center (CCC) and Rosanna as witnesses, while the State called Dr. Julia Ramos-Grenier, Ph.D, and DCF social worker Julie Marquez.
Calhoun testified that Rosanna had been referred to CCC by the Crossroads Drug Treatment program after her successful completion of that program. Calhoun saw her for substance abuse counseling and, later, mental health issues. According to Calhoun, Rosanna admitted that she was bipolar and would become hypermanic without her medication. Calhoun also stated that DCF ordered Rosanna and her significant other (SO), Pablo, to undergo couples. counseling. Calhoun saw them twice in that context, but then couples counseling was discontinued by mutual agreement of all parties, a disposition that the witness indicated was other than a successful completion.
Calhoun indicated that Rosanna had rendered all negative urines while she was in counseling. Exhibits submitted by the respondent Rosanna indicate that she submitted eleven negative urines between March, 2002 and September, 2002. However, Calhoun testified that Rosanna submitted a hair test that was positive for cocaine on July 11, 2002. When confronted with this, Rosanna denied using drugs, a position that she maintained during testimony.
Calhoun concluded her direct testimony by opining that Rosanna has not successfully addressed her substance abuse problems, and that she is still addressing her substance abuse and mental health issues. She is apparently still in mental health treatment with CCC.
Rosanna testified that she still sees Dr. Perez for psychotherapy once per month and takes her prescribed psychotropic medication faithfully. She also testified that she still sees Calhoun for counseling at CCC biweekly. She indicated that she lives with her SO in an apartment with CT Page 14025-c sufficient room for Penelope and that she would be able to provide for her.
On cross examination, Rosanna denied having disclosed to DCF that her SO had punched her in eye, denied having struck Penelope during a home visit or verbally harassing her, denied having a present drug problem, denied suffering from depression, and denied having any need for psychotropic medication. She testified that Penelope actually wants to be with her, but is being manipulated by her foster mother.
Rosanna did admit having had a substance abuse problem in the past, and to having had two prior suicide attempts and one suicidal idealization in 1999.
Dr. Grenier testified that she evaluated Rosanna and Penelope, as well as other siblings and their fathers. She indicated that Rosanna had an average IQ, had difficulty in interacting with people, was abnormally suspicious of people, suffered from depression, and had trust issues. Dr. Grenier stated that Rosanna felt that people would misuse, criticize or injure her and that she displayed some paranoid traits.
Dr. Grenier also testified that Rosanna was in denial concerning her substance abuse and mental health issues and that her denials lessen her chances of ever successfully achieving rehabilitation or reunification with Penelope. She also pointed out that forcing Penelope to visit with Rosanna is not good for Penelope if Penelope does not want to visit with her.
Dr. Grenier's opinion was that it was inappropriate to return Penelope to the care of Rosanna at this time. She believed that Rosanna was in need of both psychiatric and individual counseling to address her mental health needs.
Julie Marquez, a DCF social worker and the case worker on this matter testified that Penelope was a bright eight year old child who is thriving in her foster home with better grades and subsided behaviors. Marquez stated that Rosanna's family had a history with DCF starting in 1993, that Penelope had been previously.adjudicated as neglected and committed to DCF, and that there were serious parental deficiencies in the home. Marquez indicated that Rosanna had unresolved substance abuse issues, that she made inappropriate comments and behaved inappropriately during visitation, that there was inappropriate discipline in the home and that there were unresolved domestic violence issues in the home. Marquez further testified that Rosanna verbally attacked her during a visit in the presence of Rosanna's children CT Page 14025-d
Marquez also testified that, on March 7, 2002, Rosanna called her to cancel visitation, and indicated that her SO had punched her in the eye. On March 13, 2002, Marquez stated that she saw Marquez with a circular black and blue mark under her eye and that the SO admitted punching Rosanna. Marquez further testified that Pablo was subsequently barred from the DCF building after leaving her threatening messages and the Connecticut State Police (CSP) were called in to investigate. Eventually, CSP arrested Pablo for trespassing.
Marquez also testified that, on August 2, 2002, Penelope disclosed that Rosanna had hit her with a belt during an unsupervised visit and that, upon confronting Rosanna, Rosanna admitted hitting Penelope on the buttocks.
Marquez indicated that, in July, 2002, Penelope was uncomfortable concerning visitation with Rosanna. This discomfort appeared to increase until the visits were stopped in August, due to the physical discipline claim. Also, Penelope's therapist recommended against continuing the visits with Rosanna. Marquez stated that when she last saw Penelope in September, 2002, Penelope did not want to visit Rosanna or return to her custody. After having been qualified as an expert witness in the area of social work, Marquez opined that Rosanna was an unsuitable placement for Penelope, due to her:
1. inappropriate discipline;
 2. question of domestic violence and other inappropriate behavior in the home;
3. inappropriate behavior and comments at visits;
 4. denials of substance abuse, mental health and domestic violence issues.
Marquez indicated that Penelope should not be returned to Rosanna at this time and recommended that the DCF commitment for Penelope be maintained.
Adjudication
Connecticut General Statues § 46b-129 (m) provides that:
"Any court by which a child. . . . has been committed pursuant to the provisions of the section, may, upon CT Page 14025-e the application of a parent. . . . upon finding that cause for commitment no longer exists, revoke such commitment. . .".
The case law has held that:
 "The burden is clearly upon the persons applying for the revocation of commitment to allege and prove that the cause for commitment no longer exists. Once that has been established, the inquiry becomes whether a continuation of the commitment will nevertheless serve the child's best interests. . . . . . . . The court, in determining whether cause for commitment no longer exits, would obviously look to the original cause to see whether the conduct or circumstances that resulted in commitment continue to exist . . . The trial court, thereafter, "may consider if any cause for commitment still exists." (Internal citations and quotations marks omitted.) In re Cesar G., 56 Conn. App. 289, 292, 293, 294, 742 A.2d 428, (2000).
Based upon the testimony and evidence brought forth, it is clear that the respondent mother Rosanna has failed to show that the cause for commitment no longer exists. Rosanna's own witness, Jacqueline Calhoun of CCC, testified that Rosanna has not successfully addressed her substance abuse problems, and that she is still addressing her substance abuse and mental health issues.
Both Dr. Grenier and social worker Marquez testified that, in their expert opinions, Rosanna was still in denial concerning mental health and substance abuse issues. Marquez also testified that Rosanna was in denial concerning domestic violence issues and had inadequate parenting skills. Both individuals recommended against returning Penelope to Rosanna.
The court finds the testimony of Calhoun, Grenier and Marquez to be credible and believable. Indeed, various aspects of Dr. Grenier's analysis of Rosanna's mental state appear to have been born out in Rosanna's behavior with Marquez and with Penelope. Penelope and her siblings were committed to DCF as a result of Rosanna's mental health issues as evinced by her suicidal idealizations and intent in 1999. Obviously, those unresolved issues still exist today.
Further, even if the court were to have concluded that there are no causes for commitment remaining, the court is required to consider CT Page 14025-f whether or not a continuation of the commitment will nevertheless serve Penelope's best interests. In view of the nature of the unresolved problems plaguing Rosanna, the issues surrounding Rosanna's inappropriate behavior with Penelope, her desire to maintain a friendship and relationship that is apparently both undesirable and fraught with violence, Penelope's refusal to visit with her mother and her therapist's recommendation that visits between Rosanna and Penelope be discontinued, it has been shown by a fair preponderance of the evidence that a continuation of the commitment will serve Penelope's best interests. See In re Juvenile Appeal, 177 Conn. 648, 658-59, 420 A.2d 875 (1979); In re Alexander C., 60 Conn. App. 555, 559, ___ A.2d ___ (2000).
 ORDER
The Motion to Revoke the Commitment of Penelope M. to the custody of the Department of Children and Families is hereby ordered DENIED.
___________________ Taylor, J. CT Page 14025-g