[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION FOR REVOCATION OF COMMITMENT TO DEPARTMENT OF CHILDREN AND FAMILIES
Procedural Background
In this court, (Matasavage, J.), on June 2, 2002, the respondent mother of the above listed child, Hilda, entered nob contendere pleas to allegations of neglect made in reference to her sons Julio (born May, 1997) and Xavier (born October, 2001). The neglect petition and order of temporary custody arose out of an investigation into a recently fractured leg suffered by Xavier in December, 2001. This investigation also revealed that Xavier had previously suffered a fractured right leg that was healing. As a result, the Department of Children and Families (DCF) took custody of both children on a ninety-six hour hold, obtained temporary orders of custody and filed neglect petitions as to both children.
Judge Matasavage committed both children to the custody of DCF until further order of the court. Specific steps were ordered.
On July 5, 2002, Hilda, through her counsel, filed a motion to revoke the commitment to DCF as to both children.
On October 24, 2002, by agreement of all parties, this court revoked the commitment to DCF for Xavier and returned him to the custody of Hilda with eight months protective supervision. On the same date, the hearing on the motion to revoke the commitment to DCF as to Julio commenced.
Factual Findings
Counsel for Hilda called Mindy Solomon, Carmen Afanador, and Heather Bond of Family Services of Greater Waterbury (Chapman House) as witnesses on Hilda's behalf. He also called DCF social worker Diane O'Connell and Hilda herself as witnesses. Finally, the parties agreed to the CT Page 14025-h introduction of evaluations by Dr. Diana Badillo Martinez, Ph.D and Dr. David A. Krulee, M.D.
Witnesses Solomon, Afanador and Bond testified that Julio is a resident of Chapman House, a "safe house" therapeutic facility for children. Solomon described Julio as an aggressive child with special needs who required constant supervision. She had observed two occasions where Julio exhibited "bizarre behavior" involving yelling and swinging a stick.. He receives medications and counseling while at Chapman House. Solomon indicated that Julio had been diagnosed with Post Traumatic Stress Disorder. Her recommendation was that Julio not be returned to his mother today, but be sent to a therapeutic foster home.
On cross-examination, Solomon indicated that her belief was that Julio and his mother Hilda should be reacquainted with each other gradually prior to reunification and that a therapeutic foster home would be best for Julio's needs.
She testified that the normal transition period for such reunification would be one month to six weeks. She also testified that she saw no problems with Hilda.
Heather Bond, an aftercare worker at Chapman House, described Julio as "very aggressive". She indicated that she observed him punching walls, pushing other children and stealing toys. While asked about his last observed aggressive act, she described Julio knocking another four year old to the floor and trapping that child there approximately three days prior to this hearing. She considers Julio still aggressive and indicated that Julio had previously assaulted her by kicking her.
The respondent mother Hilda's final witness was Diane O'Connell of DCF. O'Connell, the caseworker, described Hilda in glowing terms. O'Connell considers Hilda one of her best clients and indicates that Hilda complied with all of her specific steps. She indicated that she had no problems in returning the children to Hilda, but that she believed that Julio should be returned gradually, through increasingly longer visits and overnight stays with Hilda. O'Connell indicated that the visitation schedule was subject to Julio's therapist's approval and was contingent on Julio doing well with the visits and stays. O'Connell testified that she wanted to return Julio to Hilda full-time by December 13, 2002.
Dr. Diana Badillo Martinez evaluated Hilda and Julio on October 3, 2002. Her report was submitted as an exhibit by the respondent and its admission was agreed upon by all parties. Dr. Martinez was quite CT Page 14025-i complimentary concerning Hilda and her relationship with Julio, though she indicated that;
 given Julio's behaviors, significant developmental delays and susceptibility to stressors, she will require much guidance and assistance in order to be able to meet the many needs he has.
However, Dr. Martinez's assessment of Julio was rather troubling:
 Julio is a very vulnerable child, who has had a significant regression in behaviors and manifested psychotic symptoms . . . Julio appears to be neurologically immature and fragile and will require intensive assistance throughout his life-span. Julio will benefit from being with the mother and engaging in a long-term nurturing relationship. He is fragile, prone to agitation, and regressions and will be demanding much time from the mother. She will require assistance learning to manage the behaviors. Julio will require as much consistency and structure as possible. He has become adapted to the Child Guidance Clinic, and has a relationship with the therapist, this relationship and the interventions they provide should be continued. The Clinic will be a source of consistency during the period he transitions to the mother.
Dr. David A. Krulee, M.D., evaluated Julio on October 11, 2002. He reviewed various documents related to this case, including Dr. Martinez's report. Dr. Krulee also spoke to Heather Bond and Maria Shvartsman, M.A., L.A.D.C., who was Julio's treatment provider.
Dr. Krulee indicates that:
Julio presents with a complicated social history which is strongly suggestive for neglect and possibly abuse. When first taken into custody he displayed gross deviant behaviors consisting of excessive masturbation, aggressive behavior, sleep disturbance, and disturbed play sequences. The totality of. this information implies that some form of Post Traumatic Stress Disorder was underlying his behavioral difficulties, although there is no direct evidence that Julio was himself physically or sexually abused. CT Page 14025-j
 . . . It is likely, however, based on the totality of the examination that Julio is sufficiently developmentally delayed as to fall into a borderline intellectual functioning category.
Furthermore, Dr. Krulee concluded:
 The present evaluation is not of sufficient scope from which to make a recommendation regarding placement or reunification. The mother was not examined nor was a parent/child interactive assessment performed. Based on the report of Dr. Martinez, it is reasonable to conclude that the mother is at significant risk for further parenting difficulties, has intellectual limitations which may interfere with her understanding the child's psychological and development needs, and may lack the internal resources necessary to follow through with appropriate services for the child.
Adjudication
Connecticut General Statues § 46b-129 (m) provides that:
 "Any court by which a child. . . . has been committed pursuant to the provisions of the section, may, upon the application of a parent. . . . upon finding that cause for commitment no longer exists, revoke such commitment. . .".
The case law has held that:
"The burden is clearly upon the persons applying for the revocation of commitment to allege and prove that the cause for commitment no longer exists. Once that has been established, the inquiry becomes whether a continuation of the commitment will nevertheless serve the child's best interests The court, in determining whether cause for commitment no longer exits, would obviously look to the original cause to see whether the conduct or circumstances that resulted in commitment continue to exist . . . The trial court, thereafter, "may consider if any cause for commitment still exists." (Internal citations and quotations marks omitted.) In re Cesar G., 56 Conn. App. 289, CT Page 14025-k 292, 293, 294, 742 A.2d 428, (2000).
Based upon the testimony and evidence brought forth, it is clear that the respondent mother Hilda has shown that the cause for commitment no longer exists. O'Connell testified as to her progress in her steps and in her parenting skills. Indeed, DCF has already agreed to return Xavier and agrees to return Julio on a graduated schedule. Further, it appears that Hilda now knows the need to have appropriate caretakers for her children and has made satisfactory arrangements for Xavier already.
Even though the court has concluded that there are no causes for commitment remaining, the court is required to consider whether or not a continuation of the commitment will nevertheless serve Julio's best interests. In view of the nature of the unresolved problems plaguing Julio, it has been shown by a fair preponderance of the evidence that a continuation of the commitment will serve Julio's best interests. See In re Juvenile Appeal, 177 Conn. 648, 658-59, 420 A.2d 875 (1979); In re Alexander C., 60 Conn. App. 555, 559, ___ A.2d ___ (2000).
DCF and Julio's therapist believe that a gradual reacquaintence between Hilda and Julio is necessary for reunification. This court finds that assertion to be credible and in Julio's best interest.
 ORDER
The Motion to Revoke the Commitment of Julio R. to the custody of the Department of Children and Families is hereby ordered DENIED.
___________________ Taylor, J. CT Page 14026