### IN RE ALEXANDER C.*
### (AC 19883)

Lavery, C. J., and Foti and Healey, Js.

---

\* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

Argued September 21—officially released October 31, 2000

*Valerie Alexander*, with whom was *William R. Kinloch*, for the appellant (respondent).

*Jonathan W. A. Ruhe*, with whom, on the brief, were *Barbara J. Ruhe* and *Jennifer L. Breuer*, legal intern, for the appellees (intervening grandparents).

### Opinion

LAVERY, C. J. The respondent mother appeals from the judgment of the trial court denying her motion to transfer guardianship of her minor child to her from her parents. On appeal, the respondent claims that (1) the court's decision was against the weight of the evidence, (2) she was prejudiced by the refusal of the grandparents to follow the orders of the court, (3) the child was prejudiced by the refusal of the grandparents to follow the orders of the court and (4) the court in its decision ignored the best interests of the child. We affirm the judgment of the trial court.

The facts relevant to the disposition of this appeal are as follows. On November 20, 1992, Alexander, then four months old, was removed from the respondent's care by the department of children and families (department) and placed in foster care. Alexander was adjudicated a neglected child on April 13, 1993, and his guardianship was transferred to his maternal grandparents, who have provided for his daily care since that time. The respondent has had contact, both informally and by court order, with Alexander throughout the years.

On June 19, 1998, the respondent filed a motion to open and transfer guardianship of her son from his maternal grandparents to herself. Subsequently, the respondent filed a motion for unsupervised visitation. The court heard five days of testimony from the respondent, the grandparents and twelve other witnesses, and was presented with twenty-nine exhibits. In its November 27, 1998 memorandum of decision, the court found that "[f]rom the evidence to date, [the respondent] has demonstrated the commitment, skills and understanding to become a full-time parent to Alexander in the near future." The court, however, concluded that "without the increasing and unsupervised visitation recommended by [the department] and [Robert D. Meier, a court-appointed psychologist-evaluator], it is premature to return guardianship of Alexander to his mother . . . ." The court then granted the respondent's motion for unsupervised visitation, entered interim orders and continued the hearing on the motion to transfer the guardianship until March 1, 1999, for final disposition.

Starting on March 1, 1999, the court heard an additional four days of testimony and received additional exhibits from both parties. The trial concluded on May 24, 1999. In its June 21, 1999 memorandum of decision, the court stressed the inability of the parties to cooperate, the recent marriage of the mother, her planned

move to New York City and the obvious hostilities between the grandparents and the mother, but stated that "the specifics of the hostilities that exist between [the respondent] and her parents do not focus on what is in the best interest of this child." The court then examined the testimony of two psychologists who have been involved in this case. They both testified that the child's grandparents are his psychological parents, and the court found their testimony credible.

The court found that Michael Pines, a licensed clinical psychologist, with whom the grandparents had consulted in their care of Alexander, had seen the child since approximately June, 1998.[1] Although he advocated in 1997 for increased access between Alexander and his mother, in the final stage of the trial, he stated that the child has an "anxious attachment" problem and that it is clear that the grandparents are the "psychological parents" of the child. He also explained that there was a "significant increase in [Alexander's] anxiety and insecurity most notably since the overnight [unsupervised] visitation." In Pines' professional opinion, a transfer in guardianship would not be in the best interests of the child.

The court also found that Meier, the court-appointed psychologist-evaluator, reviewed the relationship between the respondent, her parents and Alexander several times since 1995. Although his November, 1998 written report suggested that reunification between Alexander and his mother be granted, in 1999 it was his opinion that the mother was not the "psychological parent of her child . . . [and that in] his opinion, returning the child to her care on a full-time basis would require Alexander to make significant adjustments. Alexander would need to be supported by therapy to

---

[1] Alexander's grandparents had consulted with Pines in the past, but Pines never actually examined or met Alexander until 1998.

guide him through the adjustment issues that would inevitably be expected to arise."

The four issues on appeal can be consolidated into whether the court acted in the best interest of the child. In this case, there was sufficient evidence that the court's decision was in the best interest of the child.

"The burden is clearly upon the persons applying for the revocation of commitment to allege and prove that cause for commitment no longer exists. Once that has been established, the inquiry becomes whether a continuation of the commitment will nevertheless serve the child's best interests." (Internal quotation marks omitted.) *In re Cesar G.*, 56 Conn. App. 289, 292–93, 742 A.2d 428 (2000). "[T]he primary focus of the court is the best interests of the child, the child's interest in sustained growth, development, well-being, and in the continuity and stability of its environment." *Cappetta* v. *Cappetta*, 196 Conn. 10, 16, 490 A.2d 996 (1985).

"[I]n deciding what is in the best interest of the child, the court is vested with broad discretion. The trial court had the advantage of observing the parties and witnesses. [T]he authority to exercise the judicial discretion under the circumstances revealed by the finding is not conferred upon this court, but upon the trial court, and . . . we are not privileged to usurp that authority or to substitute ourselves for the trial court. . . . A mere difference of opinion or judgment cannot justify our intervention. Nothing short of a conviction that the action of the trial court is one which discloses a clear abuse of discretion can warrant our interference." (Internal quotation marks omitted.) *Kearney* v. *State*, 174 Conn. 244, 252, 386 A.2d 223 (1978). "In determining whether there has been an abuse of discretion, the ultimate issue is whether the court could reasonably conclude as it did." (Internal quotations marks omitted.) *Simmons* v. *Simmons*, 244 Conn. 158, 175, 708 A.2d

949 (1998); *Ignacio* v. *Montana-Ignacio*, 57 Conn. App. 647, 648, 750 A.2d 491 (2000).

We conclude, on the basis of the evidence presented to the trial court, that the court reasonably concluded that it was in the best interest of the child that guardianship remain with the maternal grandparents with continued visitation with the mother. Accordingly, the court did not abuse its discretion in denying the respondent's motion for transfer of guardianship.

The judgment is affirmed.

In this opinion the other judges concurred.