[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
I. Procedural Background
The motions before the court are (1) the motion of respondent father (the respondent or Roberto B.) to revoke the commitment of his minor child, Jade B., to the department of children and families (the department or DCF) and (2) the motion of the department to revoke Jade B.'s commitment and to transfer her guardianship to her paternal aunt, Nancy B.
Jade B. was born on August 28, 1999, to the respondent, who is now twenty-nine years old, and Dawn B. On September 3, 1999, the department filed a motion for order of temporary custody and a petition alleging that Jade B. was neglected. On that date, the court granted temporary custody to the department; on March 21, 2000, the court found that the child was neglected and ordered that she be committed to the guardianship of the department. The court also ordered that, in order to regain custody and/or guardianship. the respondent must comply with the following specific steps: Keep appointments set by and with DCF; cooperate with DCF home visits; keep his own and the child's whereabouts known to DCF; participate in parenting and individual counseling; submit to substance abuse assessment and treatment, including aftercare and relapses prevention; submit to random drug testing; cooperate with court ordered testing and evaluations; sign releases authorizing the department to communicate with service providers re his attendance, cooperation and progress; secure and maintain adequate housing and income; refrain from substance abuse; avoid involvement with the criminal justice system and cooperate with probation or parole officer and comply with the conditions or probation or parole; advise DCF immediately of changes in the composition of his household; and visit the child as often as permitted by DCF. In addition, the court ordered that, upon reunification, the respondent must do the following: accept and cooperate with in-home support services; meet and address the child's physical, educational, medical or emotional needs; and make all childcare arrangements to insure that the child is adequately and appropriately cared for.
On October 4, 2000, following a hearing on the department's motion for review of its permanency plan, the court found that the department had made reasonable efforts to make it possible to return Jade B. to her home and that it was not appropriate for the department to continue to make such efforts as to either parent. The court approved the goal of the permanency plan, i.e., to revoke the child's commitment to DCF and to transfer her custody and guardianship to Nancy B.
On June 29, 2001, the respondent filed a motion to revoke Jade B.'s commitment to DCF and to grant him custody of the child. On October 11, CT Page 9942 2001. the department filed a motion to revoke Jade B's commitment and to transfer her guardianship to Nancy B. Although the child's mother, Dawn B., also filed a motion to revoke commitment and for custody in October 2001, she withdrew her motion and is no longer involved in this matter. The court held a hearing on the motions over a period of several days, beginning on April 11, 2002, and concluding on May 7, 2002.
II. Factual Background
Based upon the evidence presented at these hearings and upon the court's observation of the numerous witnesses and their demeanor, the court finds the following facts. The respondent began using drugs at the age of twenty-three years in 1995, when his wife[1] was diagnosed with leukemia. He relapsed into drug use several times after her death, which occurred in 1996. As a result of problems associated with his drug use, the respondent was incarcerated for possession of narcotics. He met Dawn B. in 1998, after he was released from prison, and they had a brief relationship. The respondent was incarcerated for a violation of probation around the time he learned that Dawn B. was pregnant, through the time of Jade B.'s birth, and until March 22, 2000. He returned to prison on April 24, 2000, for a probation violation related to the possession of counterfeit money, and was released on November 17, 2000. Upon his release, Roberto B. voluntarily entered into an inpatient substance abuse treatment program at a VA hospital. He completed the program as of December 19, 2000, and received a certificate that he did so successfully. The program then placed him in a shelter and he continued his treatment at the VA as an outpatient. Although the respondent attended the program for approximately one month beginning in January 2001, he was discharged for not complying with treatment on April 27, 2001. While in the program, he had a positive screen for marijuana use. His last relapse was a day in June 2001, when he used cocaine. Following the second relapse, Roberto B. attempted to get into a different program, and eventually, in October 2001, he resumed his treatment with the VA outpatient program and still attends that program. The respondent acknowledged that he did not resume treatment as soon as his relapse occurred. At that time he was working full time at two jobs. He attends group therapy, a men's support group, and meetings of Narcotics Anonymous and Alcoholic Anonymous. In December 2001, he successfully completed a program in parenting education and support at New Haven Family Alliance.
As to his employment and living situation, in January 2001, after he got a job, he left the shelter and got an apartment. He is presently employed by Home Depot as an interior design consultant. He is a reliable and hard-working employee. The respondent has health insurance, including medical and dental coverage, through his employment and would be able to add Jade B. to his policy. He presently lives in an apartment with his CT Page 9943 fiancee and her two young daughters, whom he provides with support.[2]
The respondent and his new family appear to have a normal familial relationship.
From the time of Jade B.'s initial commitment, on March 21, 2000, to the present, the department placed Jade B. in the care of Nancy B. The respondent acknowledges and the evidence is clear that Nancy B. has done a lot for his daughter. The respondent wants his sister to continue to be a part of his child's life. As to the impact a change in custody would have on Jade B., the respondent concedes that it will be difficult. The respondent presently visits Jade B. for one hour, twice a week. The visits usually take place in Nancy B.'s home under her supervision and/or that of a DCF worker. The respondent and his daughter are comfortable in each other's company; however, Nancy B.'s presence limits his ability to parent his child and the presence of Nancy B's fiancee has interrupted his visits on occasions.
Jade B. lives with Nancy B. Roberto B.'s and Nancy B.'s mother and sister and her child also live in the home. Nancy B. has never been married; however, she and her fiancee pretended to get married for the sake of her fiancee's family. They put their plans to marry on hold until they are able to determine how the children involved in their lives adjust to each other. Her fiancee rents an apartment and lives there with his eight-year-old son,[3] but sees Nancy B. and Jade B. every day. According to Nancy B., her fiancee gets along well with Jade B. Nancy B. currently works as a medical assistant on a per diem basis. While she is working, her sister or her mother takes care of Jade B.
Nancy B. thinks that Jade B. should eventually be reunited with the respondent and appears to be willing to work with him to accomplish this goal. At present, however, Nancy B. thinks that the child should remain with her until her brother demonstrates that he has actually changed, is stable and is able to assume the responsibilities of parenthood. She is willing to commit to care for Jade B. on a long term basis if necessary.
 DISCUSSION
Pursuant to General Statutes § 46b-129 (m): "The commissioner, a parent or the child's attorney may file a motion to revoke a commitment, and, upon finding that cause for commitment no longer exists, and that such revocation is in the best interest and welfare of such child or youth, the court may revoke the commitment of any child or youth." In addition, General Statutes § 46b-129 (k)(1) provides in pertinent part: "Nine months after a permanency plan has been approved by the court pursuant to this subsection, the commission shall file a motion for review of the permanency plan and to maintain or revoke the commitment." CT Page 9944
According to our Appellate Court, "[t]he burden is clearly upon the persons applying for the revocation of commitment to allege and prove that cause for commitment no longer exists. Once that has been established, the inquiry becomes whether a continuation of the commitment will nevertheless serve the child's best interests. On this point, when it is the natural parents who have moved to revoke commitment, the state must prove that it would not be in the best interests of the child to be returned to his or her natural parents." (Internal quotation marks omitted.) In re Cesar G., 56 Conn. App. 289, 292-93, 742 A.2d 428
(2000). In addition, "a `best interests of the child' analysis . . . is relevant, and perhaps dispositive . . . in any proceeding to transfer guardianship." In re Jessica M., 217 Conn. 459, 475, 586 A.2d 597
(1991); see also In re Alexander C., 60 Conn. App. 555, 559, 760 A.2d 532
(2000).
"The court, in determining whether cause for commitment no longer exists, would obviously look to the original cause for commitment to see whether the conduct or circumstances that resulted in commitment continue to exist. The trial court, in reviewing this case, would want to know if the evidence showed that those traits of the respondent that resulted in the [circumstances that led to the initial commitment] were addressed and corrected. The trial court, thereafter, may consider if any cause for commitment still exists." (Emphasis in original; internal quotation marks omitted.) In re Cesar G., supra, 56 Conn. App. 294. "[T]he primary focus of the court is the best interests of the child, the child's interests in sustained growth, development, well-being, and in the continuity and stability of its environment. . . . [I]n deciding what is in the best interest of the child, the [trial] court is vested with broad discretion." (Internal quotation marks omitted.) In re Alexander C., supra, 60 Conn. App. 559.
In this case, the evidence shows that the respondent has taken many of the specific steps that the court ordered him to take in order to regain custody and guardianship of Jade B. and the court lauds his efforts. This evidence indicates that the respondent has made significant efforts to address and correct the traits that resulted in the circumstances that he was in when his daughter was initially committed and that he is able to care for his child. Accordingly, the court finds that the respondent has met his burden of establishing that cause for Jade B.'s commitment no longer exists. On the other hand, however, the evidence of the respondent's two relapses indicates that he needs additional time to solidify the positive changes he has made in his life. He also needs additional time to reestablish a parent/child relationship with his daughter so that they can eventually be reunified. In the psychological evaluation, Dr. Meier recommended that "plans for reunification continue CT Page 9945 to be an option, but that at the present time Jade remain in the care of her aunt." Therefore, the court finds that a continuation of Jade B.'s commitment to the department would serve her best interests. Accordingly, the court denies the department's motion to revoke Jade B.'s commitment and to transfer guardianship to Nancy B. The respondent's motion to revoke commitment is likewise denied. The court finds that it is presently in the child's best interests that guardianship remain with the department, and that she remain in the care of Nancy B.
The court applauds Nancy B.'s long term commitment to care for Jade B., and yet her openness to reunification of Jade B. with the respondent. The court finds that Roberto B. does have the ability, talent and motivation to achieve his goal to reunify with Jade B. and that he has, largely by dint of his own efforts and self-direction, positioned himself to regain custody of his daughter Jade B. The court, however, finds that the respondent does not yet have a realistic assessment of his limitations or of his abilities, and that he does not yet have a full appreciation of what he must do to manage and control his deficiencies. In his evaluation, Dr. Meier recommended and the court agrees that the respondent "should be [given] the opportunity to demonstrate an ability to responsibly care for the child, and to make a commitment to necessary interventions as recommended. . . ." Therefore, pursuant to General Statutes § 46b-129 (k)(2), the court finds that it is presently appropriate for the department to make reasonable efforts to reunify Jade B. with the respondent and to return her to his care. Accordingly, pursuant to § 46b-129 (k)(2), the court orders the department to institute a specific plan to reunify the respondent and Jade B. Pursuant to this statute, the reunification efforts "shall ensure that the [child's] . . . health and safety are protected. . . ." General Statutes § 46b-129 (k)(2). The respondent and Nancy B. are to cooperate with the department and with each other in formulating and participating in the plan. The plan is to include specific steps that allow the respondent to take increasing responsibility for his daughter as well as steps that allow the child to be introduced to the respondent's home and new family. The plan shall also provide that the respondent is to follow the recommendations set out by Dr. Meier in his report, as supplemented and amended by him following updated psychological evaluations of Jade B., Nancy B. and Roberto B., which the court is ordering as part of this opinion.[4] Inquiry is to be made of Dr. Meier whether additional evaluations are needed, such as evaluations of the respective partners of Nancy B. and the respondent, and what services are needed and recommended to expedite and facilitate the reunification process, such as counseling and therapy involving Roberto B., Nancy B. and Jade B.
In addition, the plan is to require the respondent to allow Nancy B. to remain involved in Jade B.'s life, as her aunt, after reunification is CT Page 9946 accomplished, to the extent that Nancy B. desires to do so and to the extent that the plan is consistent with professional recommendations. Pursuant to § 46b-129 (k)(1), this matter will be reviewed again at a hearing on October 11, 2002.
Lois Tanzer, Judge