[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: TERMINATION OF PARENTAL RIGHTS
This memorandum of decision addresses a petition brought to terminate the parental rights (TPR) of Alfredito V. (Alfredito), the biological father of Varsachi V. (Varsachi), born November 2000, and Julia V. (Julia), the biological mother of Varsachi. The Department of Children and Families (DCF) filed the TPR petition against Alfredito and Julia on May 2, 2002, alleging:
abandonment, as to both parents;
failure to rehabilitate, as to both parents, and;
 lack of an ongoing parent-child relationship, as to both parents.
For the reasons stated below, the court finds the TPR issues against Alfredito and Julia and in favor of the petitioner State of Connecticut and DCF.
The history of the file reflects that DCF obtained custody of Varsachi through an Order of Temporary Custody (OTC) entered by the court (Dewey, J.) on January 22, 2001. On the same day, DCF also filed a petition alleging that Varsachi was neglected and uncared for. On January 26, 2001, Judge Dewey sustained the OTC and ordered specific steps for both parents.
On July 12, 2001, before the court (Reynolds, J.), Julia pled nolo contendre to one count of neglect, in that she denied Varsachi proper care, while Alfredito stood silent. Judge Reynolds adjudicated Varsachi neglected and committed him to the custody of DCF for one year, until July 12, 2002. Judge Reynolds also entered specific steps for both parents. CT Page 15334-ff
On February 13, 2002, Judge Reynolds, over the objection of Alfredito, approved of the permanency plan, which called for a TPR and adoption. The court file notes that Julia was not present for this hearing.
DCF filed the TPR petition against Alfredito and Julia on May 2, 2002. Alfredito was served in hand with the petition at Corrigan Correctional Center in Uncasville, while Julia was noticed by publication in the Waterbury Republican American. She failed to appear and was defaulted, effective May 31, 2002.
On July 25, 2002, the court (Brenneman, JTR) appointed an attorney to conduct a diligent search for Julia. The attorney reported in September that she was unable to find Julia.
The TPR was tried before this court on October 30, 2002.
This court has jurisdiction over the pending case. Notice of this proceeding has been provided in accordance with the applicable provisions of the Practice Book. No action is pending in any other court affecting custody of Varsachi.
FACTUAL FINDINGS
The Court has reviewed the verified petition, the TPR social study[1]
and the other documents submitted in evidence, which include records from the Department of Corrections (DOC). The court has utilized the applicable legal standards[2] in considering this evidence and the testimony of trial witnesses. Upon deliberation, the court finds that the following facts were proven by clear and convincing evidence at trial.
PROCEDURAL EVENTS PRIOR TO THE TPR TRIAL
The history of the file reflects that DCF obtained custody of Varsachi through an Order of Temporary Custody (OTC) entered by the court (Dewey, J.) on January 22, 2001. On the same day, DCF also filed a petition alleging that Varsachi was neglected and uncared for. On January 26, 2001, Judge Dewey sustained the OTC and entered specific steps for both parents.
On July 12, 2001, before the court (Reynolds, J.), Julia pled nolo contendre to one count of neglect, in that she denied Varsachi proper care, while Alfredito stood silent. Judge Reynolds adjudicated Varsachi neglected and committed him to the custody of DCF for one year, until July 12, 2001. Judge Reynolds also entered specific steps for both parents. CT Page 15334-fg
On February 13, 2002, Judge Reynolds, over the objection of Alfredito, approved of the permanency plan, which called for a TPR and adoption and found that continued efforts at reunification of either parent with Varsachi were no longer appropriate. The court file notes that Julia was not present for this hearing.
DCF filed the TPR petition against Alfredito and Julia on May 2, 2002.
JULIA
Julia was born in January, 1984. Her family had an extensive history with DCF dating back to 1979, with over twenty substantiated reports. In 1996, DCF invoked a 96 hour hold on Julia and her siblings due to claims that her father had engaged in sexual abuse. Julia admitted that the father had raped her numerous times. Subsequently, Julia was committed to DCF until she signed a refusal of services at age sixteen. Her father was incarcerated for child molestation.
Julia had a troubled history while in DCF care, due to multiple placements and disruptions resulting from her violent behaviors, suicidal thoughts and ideations, psychotic episodes, fire setting, aggression, beyond control behavior, assaulting staff at a residential facility and chronically running away. She has been diagnosed with: Impulse Control Disorder, Post Traumatic Stress Disorder, Depressive Disorder NOS, Major Depressive Disorder, Oppositional Defiant Disorder and Borderline Intellectual Functioning. She last completed the ninth grade in special education and collects Social Security benefits due to her multiple diagnoses and history of sexual abuse.
Julia has a history of marijuana use and there have been recent allegations of crack cocaine use. She was convicted in Waterbury Superior Court on August 22, 2002 of Possession of Narcotics and received a sentence of two years, execution suspended, and 2 years probation.
ALFREDITO
Alfredito was born in March, 1981. He appears to have had a normal childhood, free of neglect or abuse. He has completed the eleventh grade, and has prior convictions for Sale of Narcotics (3/30/99, 4 years e/s, 3 years probation), Breach of Peace (5/3/99, $50.00 fine), Failure to Appear in the Second Degree (2/8/01, 90 days to serve) and Use of Motor Vehicle Without the Owners' Permission (1/31/00, sentenced to time served). He has been held since April 18, 2001, in lieu of bond by DOC on various pending charges out of Waterbury Superior Court, including Sexual CT Page 15334-fh Assault in the First Degree, Kidnapping in the First Degree, Unlawful Restraint in the First Degree, Assault in the Third Degree, Breach of Peace and Violation of Probation. He has worked temporary employment such as construction and roofing in the past. He has been in jail for all but three months of Varsachi's life.
During its case, the State put into evidence a copy of Alfredito's disciplinary history with the DOC. It shows that Alfredito has received numerous disciplinary reports or "tickets" during the period prior to the filing of the TPR petition.
2/2/01 Attempted Assault of DOC Employee
6/10/01 Flagrant Disobedience
10/19/01 Fighting
10/22/01 Accessory to the Destruction of State Property
11/17/01 Out of Place
9/8/02 Interfering With Safety and Security
Flagrant Disobedience
The evidence also clearly and convincingly establishes that Alfredito has continued his pattern of misconduct and offenses even while being held in jail. The evidence clearly and convincingly reflects that Alfredito is affected by a pattern of rule violations and contempt of authority which has persisted notwithstanding the imposition of significant DOC penalties.
During his incarceration Alfredito has participated in at least three instructional programs. Through his counsel, he submitted into evidence certificates showing completion of the Tier I Substance Abuse Program at Corrigan Correctional Center on January 25, 2002, participation in HIV Awareness focus groups presented by the Beyond Fear Program on March 12, 2002, and the University of Connecticut Health Center "Cage Your Rage" Program at Corrigan Correctional Center on May 28, 2002.
During the trial, Alfredito's counsel called three DOC mental health workers and one DOC counselor. The workers testified as to Alfredito's depression and other mental health issues. They indicated that he cooperated with them in treatment and that they observed an improvement as a result. They also testified as to his concern and love for his son. CT Page 15334-fi
One of those witnesses, counselor Rey Santiago, testified that he has daily contact with Alfredito, and that he is respectful, follows rules, and posed no problems for Santiago.
Santiago also testified that Alfredito speaks about his son, has pictures of his son in his cell and calls DCF several times per month concerning his son.
RELATIONSHIP BETWEEN RESPONDENT FATHER AND RESPONDENT MOTHER
The relationship between Julia and Alfredito was described by DCF as being a dysfunctional, intermittent one in 2000. After Varsachi was born, the parents told the hospital that they would be living together and raising their son. However, they had broken up two weeks later. In December, 2000, Julia instructed the hospital staff that Alfredito was not to be visiting Varsachi. This resulted in a confrontation between Alfredito and the hospital staff where he punched the walls and had to be removed by security.
Alfredito's incarceration in January, 2001 was apparently responsible for the final end of the relationship.
VARSACHI
Varsachi was born to Julia and Alfredito on November 2000. Due to prematurity, he spent the first two months of his life in a hospital. From the hospital, Varsachi was taken into DCF custody on January 22, 2001 and has remained there ever since. He has never been in the custody of either his father or mother. On July 12, 2001, Judge Reynolds adjudicated Varsachi neglected and committed him to the custody of DCF for one year, until July 12, 2002. He has been in his current foster home since the age of five months.
Varsachi was born several weeks premature and spent the first two months of his life in the hospital. He currently receives occupational and physical therapy through Birth to Three due to his developmental delays, diagnosis of left tibial torsion, and lack of horizontal movement of his left arm. Varsachi was given a special formula due to his reflux condition. In the fall of 2001, he had a neurological evaluation and an MRI due to his grade 2 bleed in his right ventricle at birth, in order to rule out cerebral palsy. The neurological evaluation concluded that he does suffer from mild cerebral palsy. He was recently evaluated by an audiologist and has borderline normal hearing. A developmental assessment was scheduled for May 2002 at CCMC. CT Page 15334-fj
The social study describes Varsachi's relationship with Julia as poor. Julia has not visited him since October 12, 2001, despite offers of visitation through DCF. When Julia visited Varsachi, her parenting skills were weak and her behavior was inappropriate. She had been observed dancing provocatively in front of the child, making loud noises in his face and requesting strangers to hold him. Although bottles of milk were available during visits for Varsachi, Julia would go the entire 90-minute visit without feeding the child or would feed the child only a small portion of the bottle, even when Varsachi was observed to be responsive to the bottle. DCF noted little change or improvement in Julia's parenting skills during the time period in which she actually visited her son. Julia refused to attend parenting classes despite numerous referrals by DCF.
The study also points out that Varsachi's relationship with Alfredito is poor. Alfredito has been in jail for all but three months of Varsachi's life. While incarcerated, Alfredito is only allowed one hour's visit every three to six months, as recommended by Varsachi' pediatrician due to his medically fragile condition. The testimony was that Alfredito had visited with Varsachi three times since being incarcerated in April, 2001.
ADJUDICATION
In the adjudicatory phase of these proceedings,[3] the court has considered the evidence related to circumstances and events prior to May 2, 2002, the date upon which the TPR petition against Alfredito and Julia was filed, insofar as the allegations pertaining to abandonment and lack of an ongoing parent-child relationship against Alfredito and Julia is concerned.[4] With regard to the allegations of failure to achieve rehabilitation brought against Alfredito and Julia, the court has also considered the evidence and testimony related to circumstances occurring through the close of trial.[5] Upon review, as discussed below, the court has determined that statutory grounds for termination exist as to Alfredito and Julia.
LOCATION AND REUNIFICATION EFFORTS
The court reiterates the finding made earlier, establishing on February 13, 2002 that the court (Reynolds, J.) had ruled that further efforts at reunification would no longer be appropriate for the respondent with regard to this child. In addition, the court now finds that the petitioner has met its burden of proving, by clear and convincing evidence, that such reasonable efforts as were practicable under the CT Page 15334-fk circumstances[6] were made to locate and reunify Julia and Alfredito with Varsachi, as is required by General Statutes § 17a-112 (J) (1).[7] Alfredito's nearly continuous incarceration rendered him largely unavailable for participation in such services. Insofar as the parenting counseling called for by the specific steps was concerned, DCF was neither authorized nor capable of providing this service to Alfredito during any period relevant to this case.[8] Pursuant to General Statutes § 18-81, the Commissioner of Correction, not DCF, is responsible for providing "treatment, vocational and academic education" programs to individuals like Alfredito when they are incarcerated.[9]
DCF further fulfilled its obligation to make reasonable efforts to reunify Alfredito with Varsachi by providing those father-son visits at his place of incarceration which were practicable and appropriate under the circumstances of this case.[10] See In re Roshawn R., supra,51 Conn. App. 56-57. Although Alfredito, through his counsel, has argued that his pretrial incarceration and his son's fragile medical condition have limited his visitation, in this case the circumstances, conditions and frequency of father-son meetings were all governed by the DOC and Varsachi's pediatrician. Since Alfredito has been incarcerated for most of the child's life, visitation usually required transportation of Varsachi to any visits that could be scheduled, even if the respondent father was being held at some distance from the child's foster home. Furthermore, although DCF has attempted to accommodate Alfredito's desires for visitation with Varsachi, the agency was statutorily bound to meet the best interests of the child, whose fragile medical condition caused such visits to be limited in number and duration. Finally, it should be noted that the State provided evidence that this court found clear and convincing that, during the time when Alfredito was at liberty in 2001, he was offered weekly visits with Varsachi, but only visited him once. He was scheduled to visit him a second time, but failed to arrive on time.
There was also clear and convincing evidence offered that Alfredito thwarted the attempts of DCF to maintain contact with him. Social Worker D'Addona testified that Alfredito failed to give her his true address or other legitimate contact information in March and April of 2001.
Moreover, based on the clear and convincing evidence of the circumstances present in this case, the court finds that Alfredito was either unable or unwilling to benefit from reasonable reunification efforts. § 17a-112 (j) (1). The evidence is replete with indicia of Alfredito's fundamental oppositional and uncooperative relationship to authority figures, providing a firm basis for the determination that this CT Page 15334-fl respondent father cannot or will not effectively utilize such services when they are extended. Alfredito's history of repeating criminal acts, his resultant incarceration during a great part of Varsachi's's lifetime, and his status as a convicted felon indicate that he has little or no ability or willingness to modify his behavior in a positive way notwithstanding the opportunities for rehabilitation he has received through repeated sentences of probation and incarceration. This inability or unwillingness to conform his conduct to acceptable norms is found in the clear and convincing evidence establishing that Alfredito exhibited misconduct notwithstanding the imposition of disciplinary "tickets" and sanctions during his periods of incarceration prior to the filing of the TPR.[11]
Alfredito's problematic conduct while with DOC has limited his ability to obtain needed services while incarcerated. The social study indicates that he has been remanded to restrictive housing for discipline problems. A review of the court file shows that specific steps for Alfredito were ordered by Judge Dewey on January 26, 2001, and again by Judge Reynolds on July 26, 2001. However, his failure to comply with the rules at Corrigan Correctional Center have limited his access to programs there. At the trial, Alfredito, through counsel, submitted three certificates indicating that he completed three difference programs while incarcerated. The only program that appeared to be relevant upon its face to the steps was the Tier I substance abuse program. Alfredito also called several witnesses from DOC to show that he was in counseling. These witnesses, a psychiatric social worker, a LPN and a paraprofessional, all testified that they had counseled Alfredito on mental issues while in Corrigan CC. However, none of the witnesses indicated that they offered parenting counseling, which had been specifically ordered by Judge Reynolds and Judge Dewey. From their testimony of the respondent's witnesses from DOC, it was clear that their interaction with Alfredito was cursory and was primarily for the purpose of dealing with his problems within DOC. In fact, paraprofessional Stevens described the counseling as "informal", while psychiatric social worker Nichols admitted that she and Alfredito never discussed family counseling.
Furthermore, Alfredito has refused to sign releases so DCF can obtain verification of any program completions while incarcerated. This refusal violates the specific steps.
In reference to Julia, the court finds that, by clear and convincing evidence, that DCF made reasonable efforts to locate Julia and reunite her with Varsachi, as is required by General Statutes § 17a-112
(j) (1). CT Page 15334-fm
The social study indicates that Julia is a transient, prone to frequently go whereabouts unknown. As of the date of the social study, Julia had moved at least thirteen times, had not been in touch with DCF since April 2, 2002, and had not visited Varsachi since October 12, 2001.
STATUTORY GROUNDS FOR TERMINATION — ABANDONMENT § 17a-112(j) (3) (A)
The petitioner first alleges that Julia abandoned Varsachi, within the meaning of § 17a-112 (j) (3) (A).fn40 In the absence of evidence to the contrary, applying the requisite legal standardsfn41 and construing the statute in compliance with the mandate of § 17a-112 (p), the court finds this matter in favor of the petitioner.
The clear and convincing evidence related to Julia's conduct reveals that from November 11, 2000 through April 5, 2002, the respondent mother Julia failed "to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child. . . ." In re Deana E., supra, 61 Conn. App. 193. Julia has never provided any financial, emotional or physical care or support for Varsachi. Since February 21, 2001, when DCF supervised visits began, she has only visited Varsachi 21 out of 57 times. She missed approximately 60% of weekly scheduled visits with no prior notification to cancel or reschedule. She has not seen Varsachi since October 12, 2001. Julia has never sent any cards, gifts, letters or other communications to Varsachi. Finally, the social study indicates that, on January 15, 2002, the social worker informed Julia of DCF's plan to petition to terminate her parental rights. Julia's response was to tell the social worker "So, I don't care" and changed the subject.
The evidence in this matter clearly and convincingly establishes that Julia has failed the test of meeting "[t]he commonly understood obligations of parenthood" identified by In re Deana F., supra,61 Conn. App. 193 (2000). Accordingly, based on clear and convincing evidence presented in this case, the court finds that the petitioner has met its burden of proving that Julia has abandoned Varsachi, within the meaning of § 17a-112 (j) (3) (A).
PARENTAL FAILURE TO REHABILITATE — § 17a-112 (j) (3) (B)
The petitioner alleges that Julia's parental rights should be terminated because she has failed to achieve rehabilitation within the meaning of § 17a-112 (j) (3) (B).[12] Applying the requisite legal CT Page 15334-fn standards,[13] and construing the statute in accordance with §17a-112 (p),[14] the court finds this issue in favor of the petitioner. This court finds that the State has proven by clear and convincing evidence that Julia, as the mother of a child who has been found by the Superior Court to have been neglected or uncared for in a prior proceeding has failed to achieve such a degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, she could assume a responsible position in the life of the child.
On January 26, 2001 and July 12, 2001, the court ordered specific steps for Julia. The social study clearly indicates that Julia failed to comply with most of the steps.
In reference to keeping all appointments with DCF, Julia participated in one out of five Treatment Plan Conferences and/or Administrative Case Reviews.
In reference to keeping DCF notified of her whereabouts, Julia has moved at least thirteen times and has delayed notifying DCF of her whereabouts. As of the date of the social study, Julia was whereabouts unknown.
In reference to participation in counseling and making progress toward identified treatment goals, Julia was referred to Family Service of Greater Waterbury and Torrington Youth Services for individual counseling. She was referred on five different occasions, yet she refused to go. As of the date of the social study, Julia failed to show DCF any proof of counseling to address her mental health issues.
Julia failed to follow through on a scheduled psychiatric evaluation at Charlotte Hungerford Hospital in Torrington in April, 2001. She was referred for parenting counseling and teen support groups through Family Ties and Brooker Memorial on six occasions, yet has failed to provide proof of this counseling.
In October, 2001, Julia was referred to the Parent Infant Program (PIP), but refused to go.
In reference to submitting to substance abuse assessment, following recommendations regarding treatment, and completing substance abuse treatment, Julia was referred for substance abuse evaluations in December, 2000 and July, 2001, but refused to submit to the evaluations.
In reference to submitting to random drug testing, Julia has submitted CT Page 15334-fo on only one urine screening, in December, 2000. She has refused numerous times to submit to drug testings since December 2000.
In reference to following recommendations of service providers, Julia was referred to PIP, Family Ties and Family Life, but refused all of them.
In reference to securing and maintaining adequate housing, Julia has been unable to maintain adequate housing. The social study indicates that she has moved at least thirteen times since November, 2000. She also reported that she was homeless at one time and slept in doorways.
In reference to no substance abuse, Julia has admitted to ongoing marijuana use.
In reference to visiting Varsachi, Julia only visited Varsachi 21 out of 57 times between February 22, 2001 and October 12, 2001. She had not visited him from October 12, 2001 through the date of the social study.
When she did visit Varsachi, DCF noted that her parenting skills were weak and inappropriate.
Several aspects of the clear and convincing evidence in this case compel the conclusion that Julia has yet to achieve a sufficient degree of rehabilitation with regard to her fundamental issues of parental counseling, substance abuse, anger management and oppositional conduct as would encourage the belief that she could assume a responsible position in Varsachi's life at some reasonable date in the future. See In reDaniel C., 63 Conn. App. 339, 354, 776 A.2d 487 (2001); In re Ashley S., supra, 61 Conn. App. 665; In re Sarah Ann K., supra, 57 Conn. App. 448.
The most relevant aspect is the fact that Julia has consistently refused to undertake any recommended treatment programs. Julia was referred to PIP, Family Ties and Family Life for services but refused to cooperate with any of them. Her failure to start any of these programs, much less complete them, shows that she has yet to achieve a sufficient degree of rehabilitation with regard to her fundamental issues of parental counseling, substance abuse, anger management and oppositional conduct.
Other equally relevant facts are that Julia failed to attend most of the Treatment Plan Conferences and/or Administrative Case Reviews. She also failed to keep DCF notified of her whereabouts and is presently whereabouts unknown. She has failed to maintain adequate housing. CT Page 15334-fp
Julia was referred to Family Service of Greater Waterbury and Torrington Youth Services for individual counseling; however she refused referrals from DCF, stating that she would schedule an intake on her own. She was referred for counseling in March, 2001, April, 2001, July, 2001, September, 2001, and October, 2001. She has yet to show any type of verification of counseling to address her mental health issues.
Julia had a scheduled psychiatric evaluation at Charlotte Hungerford Hospital in April, 2001, but failed to follow through. She was referred for parenting classes/teen support groups through Family Ties and Brooker Memorial. She was referred for parenting classes in January, 2001, February, 2001, April, 2001, June, 2001, July, 2001 (in court), and September, 2001.
Julia has shown no verification of participation in parenting classes. A referral was made to the Parent Infant Program in October, 2001, however Julia refused to attend the program in early November. She was referred to the Morris Foundation for a substance abuse evaluation in December, 2000. Julia submitted to a urine screen, however refused to do the written evaluation. Julia was referred for another evaluation in July, 2001, but she refused to submit to it.
Since Julia's initial urine screen in December, 2000, she has refused multiple requests for further urine screens and hair tests. She has refused to go to substance abuse evaluation and has refused drug testing.
As to Alfredito, this court finds that the State has proven by clear and convincing evidence that Alfredito, as the father of a child who has been found by the Superior Court to have been neglected or uncared for in a prior proceeding has failed to achieve such a degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, he could assume a responsible position in the life of the child.
On November 26, 2002 and July 12, 2001, the following Specific Steps were ordered for Alfredito:
 Keep all appointments set by or with DCF. Cooperate with home visits, announced or unannounced, and visits by the child's court-appointed attorney and/or guardian ad litem.
 Keep child's whereabouts and your own whereabouts known to DCF, your attorney and the attorney for the child. CT Page 15334-fq
 Participate in counseling and make progress toward the identified treatment goals: Parenting, Individual, PIP Program, Independent Living.
 Accept and cooperate with in-home support services referred by DCF and make progress toward the identified goals.
 Submit to substance abuse assessment and follow recommendations regarding treatment.
 Submit to random drug testing; time and method of the testing shall be at the discretion of DCF.
Cooperate with court ordered evaluations or testing.
 Sign releases authorizing DCF to communicate with service providers to monitor attendance, cooperation and progress toward identified goals, and for use in future proceedings before this court.
Secure and/or maintain adequate housing and legal income.
No substance abuse.
No involvement/further involvement with the criminal justice system.
 Visit the child as often as DCF permits, and demonstrate appropriate parent/child interaction.
This court finds that the State has proven by clear and convincing evidence that Alfredito did fail to complete various steps. Specifically;
 Alfredito failed to attend three Treatment Plan Conferences/Administrative Case Reviews. The court notes that the only time that Alfredito attends is when he is incarcerated.
 Alfredito did not participate in counseling and make progress toward the identified treatment goals, specifically parenting and individual counseling, the PIP Program, and Independent Living.
 The court is cognizant of the fact that Alfredito has been incarcerated for most of the pendency of these proceedings and that his incarceration has limited his counseling and treatment options. However, Alfredito has limited his own ability to get the necessary treatment in jail by repeatedly engaging in misconduct while CT Page 15334-fr incarcerated.
 The court also listened to the testimony of the social worker and the two paraprofessionals from DOC. From their testimony, it was clear that their interaction with Alfredito was cursory and was primarily for the purpose of dealing with his problems within DOC. In fact, paraprofessional Stevens described the counseling as "informal", while psychiatric social worker Nichols admitted that she and Alfredito never discussed family counseling.
 Alfredito submitted into evidence through his counsel certificates showing completion of the Tier I Substance Abuse Program at Corrigan Correctional Center on January 25, 2002, participation in HIV Awareness focus groups presented by the Beyond Fear Program on March 12, 2002, and the University of Connecticut Health Center "Cage Your Rage" Program at Corrigan Correctional Center on May 28, 2002. The court further finds that, absent any evidence showing the relevancy of these programs to the specific steps, these programs do not substitute for counseling ordered by Judge Dewey and Judge Reynolds.
 Sign releases authorizing DCF to communicate with service providers to monitor attendance, cooperation and progress toward identified goals, and for use in future proceedings before this court.
It has been show by clear and convincing evidence that Alfredito has refused to sign releases or communicate with DCF concerning his specific steps and treatment. This failure is one of the most significant one, since it prevents DCF from monitoring his progress in treatment and determining if or when it is in Varsachi's best interest to be reunited with his father. His failure to comply with this critical step vitiates any other progress that he may have made in his rehabilitation.
The court is aware that Alfredito did start complying with or completed some of the steps. He completed the DOC's Tier One substance abuse program and he has participated in visitation since DCF offered visitation in July, 2001. However, this does not outweigh Alfredito's failure to comply with the other steps.
When this failure is combined with Alfredito's failure to comply with rules at Corrigan Correctional Center, it is clear that Alfredito has failed to achieve rehabilitation within the meaning of CGS § 17a-112
(j) (3) (B). The empirical evidence clearly and convincingly indicates that Alfredito has not achieved a sufficient degree of insight or skills necessary to enable him to live in a peaceable manner in the future, integral to serving as a safe caretaking parent for a child such as CT Page 15334-fs Varsachi.[15]
Varsachi is 25 months old and in need of permanency. The foster family has cared for Varsachi for more than a year and is committed to this child. To allow Julia and Alfredito further time to rehabilitate themselves, if that were possible, and assume a responsible position in the life of their child would not be in the best interest of Varsachi.
LACK OF ONGOING PARENT-CHILD RELATIONSHIP — § 17a-112 (j) (3) (D)
The State has alleged that there is no on-going parent/child relationship between Julia and Alfredito and Varsachi. This means that, based on the evidence produced, that the relationship that ordinarily develops as a result of a parent having met on a day to day basis, the physical, emotional, moral and educational needs of the child has not been established and to allow further time for the establishment of such parent/child relationship would be detrimental to the best interests of this child.
Varsachi has no present memories of his mother as he has not seen her since October 12, 2001. Varsachi would not recognize Julia as his parent in that he would not seek comfort from or go to her to have his needs met. Varsachi is significantly bonded to his foster parents as he seeks comfort from his foster parents and goes to them to have his needs met. The lack of visits by Julia demonstrates that she has little interest in Varsachi and does not have the capacity to develop a parental relationship with him.
To allow further time for the establishment of a parent/child relationship would be detrimental to the best interests of Varsachi.
As of the date of the DCF social study, Varsachi had only seen his father twice in the past six months. Varsachi would not recognize Father as his parent in that he would not seek comfort from or go to him to have his needs met. Varsachi is significantly bonded to his foster parents as he seeks comfort from his foster parents and goes to them to have his needs met. The choice Alfredito made to engage in criminal activity demonstrates that he has little interest in Varsachi and does not have the capacity to develop a parental relationship with him.
The court is cognizant of the fact that Alfredito's present incarceration is pretrial in nature and that he maintains his presumption of innocence as to the charges there. However, Alfredito is a convicted felon who has spent most of Varsachi's life under lock and key. He was on probation for a narcotics trafficking offense prior to Varsachi's birth. CT Page 15334-ft Although he still claims innocence, Alfredito did admit that he thought that he would be in jail for a long time. Based upon this admission, the court can conclude that Alfredito believes that he will be unavailable to parent Varsachi in the near future.
Obviously, Varsachi needs parents now, not later. The court finds by clear and convincing evidence that no parent/child relationship ever existed between Varsachi and either Alfredito or Julia. Furthermore, this court finds, by clear and convincing evidence that, to allow further time for either Julia or Alfredito to establish a parent/child relationship would be detrimental to the best interests of Varsachi.
DISPOSITION
As the court has concluded that statutory grounds for termination exist, it next "must determine whether termination is in the best interests of the child." (Citation and quotation marks omitted.) In reQuanitra M., supra, 60 Conn. App. 103; see also In re Valerie D.,223 Conn. 492, 511 and fn 15, 613 A.2d 478 (1992). In this dispositional phase the court has considered the evidence and testimony related to circumstances and events through the close of evidence. Practice Book33-5.
SEVEN STATUTORY FINDINGS
The court has made each of the seven written factual findings required by General Statutes § 17a-112 (k) based upon the clear and convincing evidence presented at trial, and has considered the evidence relevant to each of these findings in deciding whether to terminate parental rights. See In re Jonathon G., supra, 63 Conn. App. 528.
TIMELINESS. NATURE AND EXTENT OF SERVICES — § 17a-112 (k) (1)
On February 12, 2002, the court (Reynolds, J.) approved the permanency plan recommending termination of parental rights and found that continued efforts towards reunification with both Julia and Alfredito were no longer appropriate.
This court finds by clear and convincing evidence that DCF has provided reasonable efforts to reunify Varsachi with Julia and Alfredito. Those services were ordered in a timely manner and were appropriate for the circumstances at hand. Julia and Alfredito were given ample opportunity to cooperate with those services in order to achieve a sufficient level of personal rehabilitation. Despite all efforts made by the DCF to reunify the child, the respondents have failed to rehabilitate. CT Page 15334-fu
Julia has been given numerous treatment recommendations designed to help her improve her ability to safely parent. Julia has been given numerous referrals to mental health, substance abuse and parenting programs; however she has utterly failed to follow through with any of the recommended services. Julia has an extensive and troubling history of mental health issues and aggressive and suicidal behaviors that she has refused to address in a therapeutic setting. Julia's parenting is observed to be poor and inappropriate.
Despite being offered multiple services, Julia has failed to participate in or benefit from any treatment.
Alfredito continues to be held by DOC at Corrigan Correctional Facility. He is still facing trial on charges of sexual assault in the first degree, kidnapping in the first degree, unlawful restraint and assault in the third degree. His arrest on these charges occurred in April, 2001 after the alleged victim, an eighteen-year-old male, reported the allegations. Alfredito has refused to sign releases to allow DCF to speak to his criminal attorney regarding his upcoming trial dates and how much time he may serve if convicted. Although Alfredito continues to deny all charges, in July, 2001, he stated that he thought he would be in jail for a long time.
Alfredito has been incarcerated for all but three months of his son's life.
Julia and Alfredito have effectively been given notice of their serious and significant parenting deficits in the form of an Order of Temporary Custody of Varsachi granted by this court (Dewey, J.) on January 22, 2001, and as a result of the commitment of said child to the custody of DCF in July 2001. Julia and Alfredito have been made aware of the relevant rehabilitation issues through the specific steps to reunify, administrative reviews held by DCF, meetings with social workers, letters, etc. The court also notes that the steps were ordered twice, on January 26, 2001 and July 12, 2001.
REUNIFICATION EFFORTS PURSUANT TO FEDERAL LAW — § 17a-112 (k) (2)
As previously found in this decision, the clear and convincing evidence in this matter proves that neither Julia nor Alfredito are able or willing to benefit from such reunification services as are contemplated by the federal Adoption Assistance and Child Welfare Act of 1980, as amended. CT Page 15334-fv
On January 22, 2001, the court (Dewey, J.) made a finding that reasonable efforts to eliminate or prevent the removal of Varsachi from his home were made by DCF. On July 12, 2001, (Reynolds, J.) the court made a finding that DCF has made reasonable efforts towards reunification. Finally, on February 13, 2002, (Reynolds, J.) the court made a finding that further efforts toward reunification were no longer appropriate as to either Julia or Alfredito.
COMPLIANCE WITH COURT ORDERS — § 17a-112 (k) (3)
The court ordered specific steps for both Julia and Alfredito on January 26, 2001 and July 12, 2001.
Julia has not complied with the specific steps as she has not successfully engaged in individual therapy, substance abuse treatment. parenting classes, visitation or maintained adequate housing.
Alfredito has been placed in restrictive housing at Corrigan Correctional Center as disciplinary action due to his misbehavior. As a result of his misbehavior, his access to services are limited. The facility offers mental health and addictive services, however inmates must be compliant and refrain from violence to be eligible for services. Alfredito did provide proof that he completed the DOC Tier One substance abuse program. However, Alfredito has failed to prove proof that he has engaged in further substance abuse counseling or in proper individual counseling.
Apparently, parenting counseling is not available at Corrigan Correctional Center.
Alfredito has shown no other verification of any type of treatment while incarcerated to assist in his rehabilitation and improve his sound judgment.
THE CHILD'S FEELINGS AND EMOTIONAL TIES — § 17a-112 (k) (4)
Varsachi has been in his current foster home since the age of five months. He has bonded with this foster family and the foster parents are his psychological parents. His relationship-with Julia is poor, as mother has not visited since October 12, 2001, despite being offering visitation through DCF.
Varsachi's relationship with Alfredito is also poor. Alfredito has spent all but three months of his son's life incarcerated. Visitation is limited to one hour every three to six months, per pediatrician's CT Page 15334-fw recommendations, due to child's medically fragile status.
Varsachi is emotionally attached to his foster family who provide him with ongoing love and care.
AGE OF THE CHILD — § 17a-112 (k) (5)
Varsachi was born on November 2000; he is twenty-five months old. He needs a permanent and nurturing home in which to grow and develop to his potential. Julia and Alfredito are not capable of providing Varsachi with a permanent and nurturing home. He needs to be a part of a family that is capable of providing for his needs on a daily basis. This is even more important in view Varsachi's medical problems and specialized needs.
PARENTS' EFFORTS TO ADJUST THEIR CIRCUMSTANCES — § 17a-112 (k) (6)
Julia has not maintained any contact with Varsachi, nor with the foster parents or DCF regarding the status of her child. She has not contacted DCF since April 2, 2002. She had been given numerous referrals to mental health, substance abuse and parenting programs, but has failed to follow through with any services. She has an extensive history of mental health issues and aggressive and suicidal behaviors that she has refused to address in a therapeutic setting. Her parenting skills were observed to be poor and inappropriate. Despite being offered multiple services, Julia has failed to participate or benefit from treatment.
Julia has been unable to maintain adequate housing, moving multiple times in the last year, as well as remaining homeless, despite being offered a shelter placement by DCF. Julia has not obtained employment. Due to her impoverished circumstances, she has been reported to beg for food and sleep in doorways.
Julia has not visited with Varsachi since October 12, 2001, despite being offered visitation. Her visitation prior to that date was sporadic. Julia has shown no interest in her child's medical status or well-being.
It is apparent, by clear and convincing evidence, that Julia has made no changes in her lifestyle that would indicate that she would be a safe and nurturing parent for Varsachi.
Alfredito continues to be held by DOC at Corrigan Correctional Facility. He is still facing trial on charges of sexual assault in the first degree, kidnapping in the first degree, unlawful restraint and assault in the third degree. His arrest on these charges occurred in CT Page 15334-fx April, 2001 after the alleged victim, an eighteen-year-old male, reported the allegations. Alfredito has refused to sign releases to allow DCF to speak to his criminal attorney regarding his upcoming trial dates and how much time he may serve if convicted. Although Alfredito continues to deny all charges, in July, 2001, he stated that he thought he would be in jail for a long time.
Alfredito has been incarcerated for all but three months of his son's life.
Due to Aifredito's spending time in restrictive housing, his access to services is limited. The facility offers mental health and addictive services, however inmates must be compliant and refrain from violence to be eligible for services. Alfredito did provide proof that he completed the DOC Tier One substance abuse program. However, Alfredito has failed to provide proof that he has engaged in further substance abuse counseling or in proper individual counseling.
The State has shown, by clear and convincing evidence, that Alfredito has made no changes in his lifestyle that would indicate that he would be a safe and nurturing parent for Varsachi.
EXTENT TO WHICH THE PARENTS WERE PREVENTED FROM MAINTAINING ARELATIONSHIP WITH THE CHILD — § 17a-112 (k) (7)
This court finds by clear and convincing evidence that no unreasonable conduct by DCF, foster parents or third parties prevented Julia or Alfredito from maintaining a relationship with Varsachi, nor did the economic circumstances of either parent cause prevent such relationship, although the limitations and restrictions inherent in the foster care system and DOC remained in effect.
BEST INTERESTS OF THE CHILD — § 17a-112 (j) (2)
The court is next called upon to determine whether termination of the parental rights of Julia or Alfredito would be in Varsachi's best interests.[16] Applying the appropriate legal standards[17] to the clear and convincing facts of this case, the court finds this issue in favor of the State of Connecticut and DCF.
In determining whether termination of Julia or Alfredito's parental rights would be in Varsachi's best interests, the court has examined multiple relevant factors, including the child's interests in sustained growth, development, well-being, stability and continuity of his environment; his length of stay in foster care; the nature of his CT Page 15334-fy relationship with his foster parents and biological parents; and the degree of contact maintained with his biological parents.[18] In reAlexander C., 60 Conn. App. 555, 559, 760 A.2d 532 (2000); In re ShyinaB., 58 Conn. App. 159, 167, 752 A.2d 1139 (2000); In re Savanna M., supra, 55 Conn. App. 816. In a matter such as this, the court is further called upon to balance Varsachi's intrinsic need for stability and permanency against the benefits of maintaining a connection with his biological parents. See Pamela B. v. Ment, 244 Conn. 296, 314,709 A.2d 1089 (1998) (child's physical and emotional well-being must be weighed against the interest in preserving family integrity).
Under such scrutiny, the clear and convincing evidence in this matter establishes that it is not in Varsachi's best interests to continue to maintain any legal relationship with either Julia or Alfredito.
The evidence adduced at the trial of this matter established by clear and convincing evidence that the chances of Julia rehabilitating herself at any time, much less in the foreseeable future, are extremely small. Although it is probable that most of her problems are the result of the horrific experiences of her youth, including the sexual abuse resulting from the depravities of her own father, it does not help her son. Her unavailability will probably be permanent due to her psychiatric and emotional problems. Varsachi needs a mother now.
As to Alfredito, it is unknown exactly when he will be released from incarceration. He is facing extremely serious charges for which, if he is convicted as charged, could result in a maximum jail term of fifty-one years, in addition to any additional jail imposed as a result of his violation of his present probation. Alfredito has prevented his counsel from disclosing any information about the case, such as when it will be going on trial and what the offers have been made by the state. Perhaps the most telling information concerning his fate was revealed by Alfredito himself when he stated that he thought he would be in jail for a long time.
Clearly, Alfredito will not be available to parent Varsachi in the near future, if ever.
Even after Alfredito is released from prison, he will clearly lack the attributes and characteristics necessary to fulfilling a valid parental role, and much additional time would likely be required before he would be able to conform his behavior to societal norms, as has been made clear through his conduct in prison and on the street. The Assistant Attorney General produced DOC disciplinary reports indicating that Alfredito continued to flaunt the rules of the institution. In addition to his CT Page 15334-gz criminality, Alfredito's conduct with DCF prior to his present incarceration well-illustrates his poor judgment. The testimony of social worker D'Addona point out that Alfredito started out by refusing to give DCF his correct address and telephone number. During the short period of time that he was at liberty, Alfredito failed to attend the administrative case reviews when he was at liberty. His attendance improved when incarcerated. Indeed, it is apparent that Alfredito's concern for his son improved with his incarceration.
Another issue with Alfredito is whether he would be able to properly deal with Varsachi's specialized medical needs. Varsachi was born several weeks premature and spent the first two months of his life in the hospital. He currently receives occupational and physical therapy through Birth to Three due to his developmental delays, diagnosis of left tibial torsion, and lack of horizontal movement of his left arm. Varsachi is given a special formula due to his reflux condition. Earlier this fall, child had a neurological evaluation and an MRI due to his grade 2 bleed in his right ventricle at birth to rule out Cerebral Palsy. The neurological evaluation has concluded that child suffers from mild cerebral palsy. He was recently evaluated by an audiologist and has borderline normal hearing.
Social worker D'Addona testified that Varsachi was considered a medically fragile child and, as such, was placed in a special medically fragile foster home. He has been placed in the Birth to Three program for special needs children. His foster parents have been trained for medically fragile children. They must perform various therapy at home with Varsachi.
D'Addona reported that, while in this foster home, Varsachi has made good progress in achieving his Birth to Three goals.
Based upon Alfredito behavior and performance so far, this court cannot foresee him ever having the ability or the patience to be able to follow the regimen necessary for Varsachi to maximize his abilities and achievements.
After having been qualified as an expert witness in the field, D'Addona opined that it was in Varsachi's best interest that Julia and Alfredito parental rights be terminated and that he be adopted. She indicated that he is thriving in his present foster family and that the foster parents wished to adopt him.
Our courts have recognized that "long-term stability is critical to a child's future health and development." In re Eden F., supra, CT Page 15334-ga250 Conn. 709. Furthermore, "[blecause of the psychological effects of prolonged termination proceedings on young children, time is of the essence . . ." when resolving issues related to the permanent or temporary care of neglected children. In re Alexander V.,25 Conn. App. 741, 748, 596 A.2d 930 (1992); see also In re JuvenileAppeal (84-CD), 189 Conn. 276, 292, 455 A.2d 1313 (1983). The court is constrained to agree with Varsachi's counsel, and concludes that the clear and convincing evidence in this case establishes that Varsachi is entitled to the benefit of ending, without further delay, the period of uncertainty as to the availability of his biological parents as caretakers.
Varsachi's attorney has accordingly argued vigorously in favor of terminating Julia and Alfredito parental rights, and has requested the court to sever the child's legal ties to his biological parents so that he may proceed to adoption. Absolutely no evidence to establish the unreasonableness of this request was received by this court.
Having balanced Varsachi's intrinsic need for stability and permanency against the benefits of maintaining a connection with Julia and Alfredito, the clear and convincing evidence in this case establishes that this child's best interests cannot be served by continuing to maintain any legal relationship to the respondent parents. Pamela B. v.Ment, supra, 244 Conn. 313-314. Accordingly, with respect to the best interests of the child contemplated by § 17a-112 (j) (2), by clear and convincing evidence, and based upon all of the foregoing, including the testimony and evidence presented, the court finds that termination of the parental rights of Julia and Alfredito is in the best interest of the child Varsachi.
ORDER OF TERMINATION
WHEREFORE, after due consideration of Varsachi's sense of time, his need for a secure and permanent environment, the relationship he has with his foster parents, and the totality of circumstances; and having considered all the statutory criteria and having found by clear and convincing evidence that grounds exist for termination of parental rights; and having concluded that the termination of the parental rights at issue will be in this child's best interests, the court issues the following ORDERS:
That the parental rights of Julia and Alfredito are hereby terminated as to the child Varsachi.
That the Commissioner of the Department of Children and Families is CT Page 15334-gb hereby appointed the statutory parent for Varsachi for the purpose of securing an adoptive family or other permanent placement for him.
That a permanency plan shall be submitted within 30 days of this judgment, and that such further reports shall be timely presented to the court, as required by law. That primary consideration for adoption of Varsachi shall be offered to his current foster parents.
By The Court,
 ___________________ Taylor, J.